LAND, J.
 

 After the death of Edward C. Rhodes in May, 1920, his surviving widow, Mrs. Grace M. Rhodes, was appointed administratrix of his succession in the following month.
 

 When the succession was opened in the parish of Concordia, there were growing crops on the Ravenswood and Consuelo plantations owned by decedent, and these crops were harvested by the administratrix.
 

 Not being able to find tenants for the years 1921 and 1922, the administratrix operated the plantations during those years,' but did not charge any of th.e losses of operation against the succession in her final account.
 

 The plantations were leased by the administratrix during the years 1923 and 1924, and were sold in August of the latter year under foreclosure proceedings instituted by P. D. Brown, holder of the first mortgage.
 

 ' The final account of the administratrix shows that after payment of privileged debts, and the Brown mortgage, no money remained for the payment of ordinary creditors, and this account is opposed by the Murray Company and Rumble & Wensel Company, ordinary creditors, who seek to have the account amended and restated so as to provide for payment of the debts claimed by them.
 

 The final account of the administratrix was filed Janúary 14, 1926. The claim of the Murray Company is evidenced by the promissory note of Edward C. Rhodes for the sum of $1,424, dated March 16,1920, and the claim of Rumble & Wensel Company for $680.26 is based on an open account for the year 1921.
 

 The final account of the administratrix was homologated and approved, except as to certain items aggregating the sum of $850, which appear credited therein.to the administratrix under subheads 6, 7, and 8. It was ordered that the opponent, the Murray Company, be recognized and listed in the account, as an ordinary creditor, for the sum of $1,424, with 8 per cent, interest from March 16, 1920, plus 10 per cent, attorney’s fees.
 

 
 *491
 
 The judgment of homologation of the final account of the administratrix is silent, however, as to the claim of Rumble & Wensel Company, which is duly attested as correct and unpaid, and is not contested as to amount.
 

 As both opponents have appealed from this judgment, we see no good reason why the judgment homologating the final account should not be amended so as to recognize and list in the account the Rumble & Wensel Company, as an ordinary creditor, for the amount of its open account, as claimed in the opposition filed by said company.
 

 The grounds of opposition of both opponents are the same and, briefly stated, are as follows:
 

 1. That the administratrix did not provoke a sale of the immovables with reasonable promptness, but held the same and operated the plantations for several years, and that there resulted from these operations great losses, which are not chargeable to the succession, and which are designated in the final account as items 5, 6, 10, 11, 12, 13, 14, 15, 16, 21, 22, and 23, and appear on the credit side of same. R. C. C. arts. 1164, 1165, 1168, 1169.
 

 2. That credit should not be allowed the administratrix for items 6, 7, and 8 of the account for want of proof.
 

 The judgment of the lower court is admitted to be correct as to the rejection of these items, and this ground of the oppositions to the final account is eliminated.
 

 3. That item 17 of the credit side of the account should be disallowed because the attorney’s fees composing that item were paid by E. D. Brown for and on' behalf of the administratrix in a settlement made by her with him.
 

 The administratrix, during the year 1920 in which her husband died, continued necessarily the cultivation and harvesting of the crops of that year. She has debited herself in the final account with the proceeds of this crop, and has credited herself with the expenses incurred in the operation of the plantations for that year.
 

 None of the expenses for the years 1921 and 1922, during which the administratrix operated the plantations at her own personal risk, is charged in the account against the succession.
 

 Items 5 to 23, opposed in the account, are made up of sums necessarily expended for the preservation of the property, such as repairs, insurance, taxes, and the like. As it is well settled that it is the duty of the administrator to make such expenditures in the interest of the heirs and the creditors, the opposition to these items as credits claimed by the administratrix was properly rejected.
 

 It is true, as decided in the Succession of Sparrow, 39 La. Ann. 696, 2 So. 501, “that an executor or administrator cannot, at the risk of the succession, carry on planting operations, and contract, in so doing, debts so as to bind the estate.” This is good law, but it is not applicable to the facts in this case.
 

 As stated, the claim of the Murray Company is based on a note of the deceased, dated March, 1920. This claim was acknowledged by the administratrix as correct, at the request of this opponent in 1923, three years after the opening of the succession.
 

 .The claim of Rumble & Wensel Company is based on an open account for the year 1921. Neither one of the opponents has ever taken steps to have the property of the succession sold to pay its claim. As creditors, they had the undisputed right to compel a sale of the succession property to pay debts, if the succession representative had refused or neglected to provoke such sale. C. P. arts. 990, 991, 992. -
 

 Instead of acquiescing by silence and inaction in the gestión of the administratrix from the years 1920 to 1924, plaintiffs should have enforced their rights to a sale, if they thought that their interests would suffer by the delay.
 

 
 *493
 
 It is clear, from the facts of the case, that opponents acquiesced in the course pursued by the administratrix as one calculated to produce the best final results, and they cannot be heard, at this late date, to complain of any loss .occasioned by the prolongation of the administration, which they did not oppose.
 

 This principle of law is well settled in our jurisprudence. In the case of the Succession of Myrick, 38 La. Ann. 612, the court said:
 

 “The situation was such that the administrator was compelled to cultivate the plantation himself or abandon it to waste and ruin. He adopted the former and doubtless wise alternative to cultivate it himself on account of the succession, which he did; and though it resulted unfavorably and produced no revehue for the succession, yet it preserved this valuable (plantation) in good condition and saved it from great injury, if not the total ruin that might have resulted from its abandonment. Besides, it was entirely within the power of the heirs, who were present and represented by their tutor, and the creditors, who are now making their complaint for the first time, to have had this property sold had they desired it, by making application therefor and procuring the required order for its sale; but they were silent all those years, uttering no disapproval and evidently acquiescing in the course pursued by the administrator.”
 

 Again, in the Succession of Stille, 52 La. Ann. 1538, 27 So. 954, the court said:
 

 “The second ground of opposition set up by the widow as to the injuries resulting from the prolonged administration of the succession is not one to be properly urged by the opponent. She was on the spot, with the right to demand at any time a speedy settlement or the partition of the succession. She evidently did not think at the time that it was to her interest that this should be done, but acquiesced in the course adopted by the administrator as one calculated to lead up to the best final results. She cannot speculate upon the ultimate result, and we are by no means prepared to say that it was in fact injudicious.”
 

 The plantations of decedent were covered with a first mortgage held by Brown. This mortgage and all of the privileged claims against the succession primed the claims of opponents, as ordinary creditors. Evidently opponents speculated upon the ultimate result, and permitted the administration to continue in the hope of having their claims paid in full from the crops to be raised on these places. The cases cited above are decisive of the issue here presented. Opponents are clearly estopped from complaining.of any loss, and from asserting any claim against the administratrix because of the prolongation of her administration.
 

 The lower court held that the item of attorney’s fees in the sum of $3,000 was properly entered in the final account as a privileged debt, and as a credit to be allowed to the administratrix.
 

 We find in the record a written agreement entered into by F. D. Brown and Mrs. E. O. Rhodes in her individual capacity, prior to the foreclosure of the first mortgage held by him. By the terms of this agreement, Brown obligated himself to purchase the plantations at the foreclosure sale, and to convey them to Mrs. Rhodes at a price equal to the sum of the principal and interest of his mortgage debt, plus the additional amount of $6,500.
 

 It is expressly stated in this agreement that, if Brown became the purchaser at the foreclosure sale, he should pay the attorney’s fees due by the succession to Messrs. Dale, Young & Dale, Philip Hough, and Hugh Tullís.
 

 Brown became the purchaser at the sheriff’s sale, and, on the same day, conveyed the property to Mrs. Rhodes for the price agreed upon.
 

 The uncontradicted testimony of Judge Dale shows' that the $6,500 which Mrs. Rhodes agreed to pay Brown as” the price of the property, in addition to his mortgage debt, was made up of the following: (1) $3,000 to be paid to the attorneys for-the succession; (2) $3,000 to be paid Brown as a bonus to induce him to advance the money, and to give Mrs. Rhodes ten years in which to make pay
 
 *495
 
 ments; (3) $500 to be paid as
 
 a
 
 fee to the attorney representing F. D. Brown.
 

 Judge Dale states also in bis testimony that this sum of $6,500, including the $3,000 attorney’s fees, and the fee of $500 paid to Brown’s attorney, was included in the mortgage notes given by Mrs. Rhodes to Brown to represent the purchase price of the plantations, purchased by her from him.
 

 In other words, it appears that'Mrs. E. O. Rhodes personally borrowed the money from Brown to pay these attorney’s fees and paid them. The succession owed its attorneys $3,-
 

 000.The claim is a privileged debt and is properly charged in the account, and credited to the administratrix as such. R. C- O. arts. 3252, 3276.
 

 We find no sound objection to the admissibility of the parol evidence admitted in the case to show the various items which composed the $6,500. This additional sum is .agreed upon by. Brown and Mrs. Rhodes in their written contract as to the purchase of the property.
 

 The purpose of the testimonial proof was not to invalidate the written agreement between Brown and Mrs. Rhodes, or the subsequent act of sale made between the same parties, but was merely to show the true consideration for same, and was clearly admissible for that purpose. R. C. C. art. 1900; Loranger v. Citizens’ National Bank of Hammond (No. 26291 on our docket) 162 La. 1054, 111 So. 418.
 

 For the reasons assigned, the judgment appealed from is amended so as to recognize Rumble.& Wensel Company as an ordinary creditor of the succession for the amount of its open account, to wit. the sum of $680.26, with 5 per cent, per annum interest thereon from September 21, 1921, until paid, and it is ordered that said debt be listed on the final account of the administratrix. It is now ordered that said judgment, as amended, be affirmed.