## RUSTON BRICK WORKS v. HEARD.

### No. 5478.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

T. C. Bergeron, of Farmerville, for appellant.

T. L. Scarborough, of Ruston, for appellee.

## TALIAFERRO, Judge.

Plaintiff, whose place of business is in the city of Ruston, La., furnished defendant the bricks, plaster, mortar mixture, and forty sacks of the cement used in the erection of a brick home in the village of Bernice, La., and after crediting the account with $400, the value of a lot in Ruston, which will be hereinafter discussed, brought this suit to recover $279.90, the alleged balance due on the account, and to have recognized and enforced against the home a furnisher's lien and privilege, the evidence of which had been timely inscribed in the mortgage records of Union parish.

Defendant admits that said material was sold and delivered to him by plaintiff, but specially denies that it was sold or purchased on open account, as alleged. He denies that he now owes any part of the account, and affirmatively avers that the price of the material listed thereon has been settled in full by compliance, on his part, with an agreement made with plaintiff precedent to delivery of any part of said material. The substance of the agreement relied upon, disclosed from the answer, appears to be: That in April, 1936, after defendant had decided to erect a new home, he, accompanied by his carpenter, J. T. Tucker, went to Ruston and interviewed Mr. J. W. Jimmerson, owner of the Ruston Brick Works, with regard to furnishing the bricks, plaster, mortar mixture, and cement necessary to the completion of the proposed building, a plan of which, prepared by said Tucker, was then displayed and explained to Jimmerson; that defendant stated to Jimmerson that he and his wife owned a lot in Ruston, which they were willing to convey to him in order to procure the said material; that after viewing the lot, Jimmerson studied said plan and made estimates of the quantity of each kind of material needful to the erection of the building, and then and there accepted defendant's proposition with the exception that he agreed to furnish only forty sacks of the needed cement; that defendant consented to this exception; and that it was upon the faith of this mutual agreement that all of said material was delivered to defendant at the site of his new home. He further avers that when said contract was entered into, a well in search of oil and/or gas was being drilled five miles from Ruston, and that the plaintiff well knew, and so informed defendant, that should said well come in as a producer, said lot would enhance in value and be worth not less than $1,000; that the possibility of this hoped for happening had a controlling influence upon plaintiff's decision to take the lot as full payment of the material, but that before defendant's home was completed, the well was abandoned as a "dry hole," to plaintiff's knowledge, and it was then he decided he had made a bad bargain with defendant and immediately began to seek means to escape his obligations under the contract, this suit being the result of his repudiation of its terms.

Defendant further alleged that on July 2, 1936, he and his wife went to Ruston and, at Jimmerson's request, executed to his wife, before the clerk of court, a warranty deed conveying said lot in Ruston, in keeping with the agreement between them, and that "at the time of the execution of said deed the plaintiff herein instructed the said Ross C. Neill when drafting said deed of conveyance that he wanted the consideration to show it was for building materials furnished by plaintiff and that the said Notary Public informed plaintiff that he would have to state a cash consideration and that such a statement as to the true

consideration could not be inserted therein, that thereupon respondent stated that he had kept the property assessed at a $250.00 figure, and that they could use such a figure in the deed as the consideration therefor, but that thereupon plaintiff informed the said Notary Public to insert the sum of Four Hundred & No/100 ($400.00) Dollars, in cash, in said deed and it was so done; that said recitation of the consideration in said deed is and was erroneous; that the true consideration was for building materials furnished by plaintiff to your respondent and used in the construction of the dwelling in Bernice, Louisiana, as alleged herein, and the same should be so recognized, that before respondent would permit such transfer to the said Mrs. Cornelia Russ Jimmerson for and on behalf of plaintiff the said plaintiff informed your respondent that as to the disputed difference, if any were due, they would submit the matter to arbitration, but that on July 15th, 1936, an invoice was mailed to respondent by plaintiff informing respondent there was a balance due of $279.80 and a notation thereon 'Judge Walker will decide our case,' and thereafter an affidavit was placed on the Mortgage Records of Union Parish, Louisiana, by plaintiff seeking to preserve and perpetuate a lien and privilege as a furnisher of materials and thereafter this suit was filed by plaintiff." He prays that plaintiff's demands be rejected, his suit dismissed, and the registry of the purported lien against his property be erased from the records.

The lower court, giving written reasons therefor, ruled against defendant and gave judgment as prayed for by plaintiff. Defendant appealed.

Tersely stated, plaintiff's contention is that the lot was to be accepted by him on the price of the material at a value of $400. If the cost of the material exceeded this valuation, defendant would pay the difference; if less, plaintiff would pay defendant the difference. Defendant contends that the transfer of the lot was to extinguish fully the entire cost of the material.

The judge a qua held that the testimonial proof bearing upon this question of fact was about of equal weight; that the defense to the suit was virtually one of payment under which defendant carried the burden of proof; and that the recitals of the deed to the lot unbalanced the scales in favor of plaintiff. To reach this conclusion, the trial judge ruled that parol testimony was incompetent to prove a greater consideration than that expressed in the deed because, as he thought, the allegations of error in the answer (quoted above) were not sufficiently specific to admit such testimony. It was admitted, subject to objection, but finally rejected. Brewer v. New Orleans Land Co., 154 La. 446, 97 So. 605, 607, was cited to support the ruling.

Plaintiff is skilled in the art of estimating the quantity of material needed to erect a brick structure of given dimensions, etc., and being a dealer in such material, of course, knew the current sale prices thereof. He estimated that 30,000 brick were needed to complete the building. 29,100 were required to do so. These cost $496.50. The other material cost some $173.

Plaintiff says that he calculated that the entire cost of the material would not exceed $370, and that he would have to pay defendant some difference on the lot. In explanation of the material's cost being so much in excess of his estimate, he testified that the plan introduced in evidence by defendant was not the plan shown him when the agreement was reached; that a porch and driveway had been added, and these necessarily increased the quantity of material.

Without detailing the evidence germane to the identity of the plan, we are convinced that plaintiff is in error in regard thereto. The plan was made up by Mr. Tucker and his testimony, supported by that of defendant and his wife, satisfies us on this issue of fact. If plaintiff thought the building, less the porch and driveway, would require 30,000 brick, of course his estimate of the quantity necessary to erect the building with these two additions would have been much more. These facts and circumstances lead to the inevitable conclusion that plaintiff should have known that the cost of the material would exceed $400 by a substantial amount, even under the plan he now says guided him in making the estimates.

The hope for success of the oil well, with consequent boom to real estate values in and about Ruston, had some influence, we feel sure, on plaintiff's decision to accept the lot for the material.

Plaintiff supported his version of the terms of the contract by his own testimony. Commenting thereon, the trial judge said: "It is difficult, indeed, to follow his testimony." We fully concur in this observation. He sought to corroborate his evi-

497

dence by that of an employee. This witness' testimony is also difficult to follow. In chief, he made a fairly good witness for plaintiff and measurably corroborates plaintiff's version of the contract.. He admits, however, he did not hear all of the discussions between the parties as he was "in and out of the office during the time." He was called in rebuttal, and frankly admitted that he did not hear the final discussions and did not know which of the two propositions was finally agreed upon. He testified that "he (Jimmerson) finally said I got the Heard job at Bernice; but he didn't say how he closed it or anything about that." The probative worth of this witness' testimony is not great.

Defendant's version of the terms of the contract is plausible, consistent, and is strengthened by many inferences arising from the case, and by not a few circumstances. It is also supported by the positive evidence of Mr. Tucker, who, so far as we are able to discern, is wholly without interest.

If plaintiff's version of the contract is correct, why would he be so meticulous about determining the exact quantity of the various materials he was to furnish? The first statement he rendered defendant was after the oil well had been abandoned. This was some six weeks subsequent to first delivery of material. This statement showed a credit of $400 thereon, being for the lot which had not then been deeded.

When defendant received this statement (June 15th), he immediately replied by reminding plaintiff of the exact terms of their contract to which plaintiff replied by giving the contract's terms, as now advanced by him. The account at that time amounted to $577.75; and, notwithstanding the sharp differences between the parties, reflected from the two letters, plaintiff continued to deliver material to the building site, on request.

Another circumstance in defendant's favor is that plaintiff only delivered forty sacks of cement. The job required forty additional sacks, and those were purchased by defendant from a merchant in Bernice. Why so, if no limit on plaintiff's part as regards cement?

Tucker testified when construction had reached window height, plaintiff stopped by, and in the course of his conversation, stated that the oil well had been abandoned and that he could not afford to carry out the contract with defendant.

We are reluctant, as we should be, to reverse the ruling of a trial judge on questions of fact, expecially when the witnesses in the case are of his own vicinage; but we are impelled from a diligent study of the record in this case to the conclusion that the trial judge has erred. It is our conclusion that the defendant's version of the embattled contract is sustained by a preponderance of the evidence.

A legal question of a serious character is presented by the objection to admissibility of evidence to prove the said contract, on the ground that such evidence will do violence to the contract of sale executed pursuant to the agreement of the parties.

Plaintiff concedes the correctness of the allegations of fact contained in that part of defendant's answer quoted above. It is certain the deed would not then have been executed but for plaintiff's acquiescence in the suggestion of defendant to submit their differences to arbitration. Though agreeing to the suggestion, plaintiff very soon receded from it. The deed shows a cash consideration of $400. That is admittedly untrue. Plaintiff, himself, suggested to the notary that the consideration of the deed should be for material furnished to erect defendant's home. The price of $400 was finally inserted in the deed, also at plaintiff's suggestion. Bearing upon these facts, the answer says: "That said recitation of the consideration in said deed is and was erroneous; that the true consideration was for building materials furnished by plaintiff to your respondent and used in the construction of the dwelling in Bernice, Louisiana." More strictly speaking, the consideration, as expressed in the deed, is not the true consideration. The rule is well recognized and established that as regards contracts otherwise valid, a consideration different to that expressed therein may be proved, if such be the true consideration, under appropriate allegations. This is often done when there is no specific allegation of error. A false consideration may be put in the contract by consent of all parties; in doing so, none act under error. See McConnell v. Harris Chevrolet Co., La.App., 147 So. 827, and cases therein cited.

Such evidence does not alter or change the contract itself, but simply breathes into it the facts constituting the true consideration. We think the allegations of defendant's answer, as a whole,

warrant admission of the testimony rejected by the trial court.

The Brewer Case, supra, relied upon by the lower court, simply holds that evidence to prove a greater consideration than that expressed in the deed is not admissible in the absence of a "clear and specific allegation * * * showing error in the confection of the instrument," etc., when the purpose of such evidence is to hold the vendor on his warranty. We find no fault with that decision. The admissibility of the evidence turned upon the nature of the allegations of error. If these are sufficiently clear, the tendered evidence is admissible; if not, it will be excluded.

For the reasons herein assigned, the judgment appealed from is reversed, annulled, and set aside; and there is now judgment for defendant rejecting plaintiff's demands and dismissing his suit at his cost. The furnisher's lien and privilege, herein involved, is hereby declared of no effect, and its inscription is ordered erased from the records of Union parish.