ELLIS, Judge.
This is a suit, brought by the plaintiff as the owner and lessor of a certain parcel <~f ground and improvements located in the Town of Kaplan, Louisiana, against his lessee, the defendant herein, for the rent of said premises for the year 1938 at the rate of $50 per month, subject to a credit of $15.12, or a total sum of $584.88. (The credit should be $16.12) Plaintiff claims a lessor’s lien and privilege upon all the furniture and property in the leased premises and prayed for and obtained a writ of provisional seizure under which the same was seized by the sheriff. Although this writ was issued on December 4, 1948, under a verbal agreement entered into by the attorney for plaintiff, the defendant and the Sheriff, the defendant was permitted to operate his saloon until Tuesday, December 7, 1948.
On the 9th day of December defendant obtained an order- permitting him to furnish bond, which he did, and obtained a release of the property. Defendant in his answer denied that he was indebted to the plaintiff in any amount whatever and further alleged that during the latter part of December 1947 he had purchased the contents of a saloon from the plaintiff for $4,000 cash which he had paid to the plaintiff. He admitted haying entered into the lease with the plaintiff for $50 per month but alleged that during the month of February 1948 the plaintiff was in need of funds and had requested defendant to pay the entire amount of rent for that year in advance, and that there was also due at that time to the plaintiff an indebtedness by the defendant which he acknowledged to be $400, and that defendant, therefore, executed his check for $1,000 in order to pay the rental and indebtedness and by the payment of these amounts he had discharged his obligation of rental toward the plaintiff for the entire period of the lease.
Defendant then assumed the position of plaintiff in reconvention and alleged that the plaintiff was indebted unto him in the amount of $960.95 for money advanced in the sum of $150 and for goods and merchandise purchased from the defendant in *148 the sum of $60.95, and tliat due to the illegal issuance of the provisional seizure he had suffered damages in the amount of $750 for loss of earnings, embarrassment and humiliation. . . ,
The case was duly tried and-resulted in a judgment for the plaintiff for $583.88 as prayed for from which the defendant has appealed.
The record discloses that on' the '23rd day of December, 1947, plaintiff and defendant executed an act of sale in which the plaintiff sold, transferred'and delivered unto defendant “all of the furniture, equipment, accessories, stock, merchandise and other movable effects belonging to and forming a part of the business known as ‘Dartez Bar’ located on State Highway No. 43 in the town of Kaplan, Vermilion Parish, Louisiana,” before Mr. Marcus A. Brous-sard, attorney-at-law and Notary Public in the Town of Labadieville,' for a cash consideration of $4,000, the vendor accepting the receipt thereof and’giving full acquittance therefor. This sale was dated January 1/1948 and was not placed of record until the 2nd day of January, 1948. More than likely this was done in order that the business might be carried on under the same license until January 1, 1948, as the defendant did take possession of and operate the business on the 24th day of December, 1947, and there is in the record an agreement dated the 23rd day of December, 1947 by which the plaintiff presumably employed the defendant “to manage, supervise, conduct and run as he may deem fit or proper” his business known as “Dartez Bar”, and as compensation the defendant was to be given all the profits accruing from the business during the term of his employment which was to "expire on January 1, 1948.
At the time of the execution of the sale of December 23, 1947 the evidence discloses that the defendant had a check of Joe Dore’s" for $3,000 but was unable to cash it on that day as it was on an out-of-town bank. The defendant, therefore, caused to be drawn in the notary’s office on the typewriter one check for $3,000 which is in evidence and made payáble to cash and signed by himself. The defendant further drew another check f.or $1,000 which was held by Mr. Broussard and which defendant admitted having given “to prove that he was going to Buy the property.” It is admitted that this check was worthless and was merely given as evidence of good faith •by the defendant. This check was later destroyed by Mr. Broussard upon instructions from .the plaintiff. Plaintiff testified that he told Mr. Broussard to destroy this check after he had received a $1,000 check dated February 21, 1948 which was good. While Mr. Broussard is not definite as to the time the plaintiff told him to destroy the check, he estimated it at several weeks or. about three weeks after the sale on December 23, 1947. In view of his indefiniteness as to the time, we believe the plaintiff’s statement to be correct.
It is further shown by the' record that the next day the local bank found that the check for $3,000 was good and the defendant had this deposited to his account and cashed the $3,000 check' which had been written on the typewriter in Mr. Brous-sard’s office. The defendant’s wife and the plaintiff’s wife were the ones who went to the bank and cashed this check, and the money was brought back to the saloon where it was paid to the plaintiff. Defendant and his wife testified that $1,000 more in cash was paid to the plaintiff by the defendant at the same time; that this $1,000 in cash represented the proceeds of the sale of rice by the defendant to Lloyd Simon. The plaintiff and his wife deny that the defendant paid any amount other than the $3,000 at that time, and, on the contrary, testified that a check for $1,000 dated February 21, 1948 and signed by the defendant, Ellic Meaux, was given to them in order to complete the payment of the $4,000 due as a consideration for the purchase of the contents of the saloon. The defendant contends that the check dated February 21, 1948 for $1,000 was given to the plaintiff and represented $600 rent for the year 1948 in advance and $400 which he claimed the plaintiff said he owed him. Thus, in order to reach a correct decision in this case it is necessary that the Court decide whether the $1,000 check was given *149 to complete the consideration for 'the sale or as an advance for one year’s rent plus indebtedness due by the defendant to the plaintiff.
Counsel for defendant strenuously objected to any testimony to vary, or contradict the terms of the act of sale. No attack is being made upon the sale nor does plaintiff seek to change the amount of the consideration as stated therein, but merely to show that the consideration of $4,000 was not paid on the date set forth in the deed.
The objection was referred to the •merits by the trial court and in his excellent written reasons for judgment he overruled the objection and correctly considered the testimony and we adopt his reasons for so ruling, which are as follows:
“It is a well recognized doctrine in this-state that the real and true consideration for a sale may always be shown where a consideration is expressed, even though the consideration may be different from that expressed in the deed.”
“This was very clearly stated in Wainwright v. Gilham, (La.App.) 188 So. 434-436, wherein the court said:
“ 'Plaintiff argues that the rule of evidence invoked by defendant is inapplicable to the facts of this case for two reasons,viz.:
“ T. That a transfer of ownership of an automobile may be proven by parol evidence;
“ ‘2. That the expressed consideration in a contract, whether of sale or otherwise, when inaccurate or incorrect, may be broken down and the true consideration established by evidence other than written, without doing violence to the parol evidence rule.’
‘“(1) The correctness of the second of these propositions is no longer open to debate in this state. The same rule prevails generally throughout the country. If there is a real and genuine consideration for. the contract, it may be proved by any sort of evidence, even though such proof establishes . a consideration materially. different to that expressed in the written instrument. Morris v Monroe Sand & Gravel Co., 166 La. 656, 117 So. 763; Queensborough Land Co. v. Cazeaux, 136 La. 724, 739, 67 So. 641, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248; Ruston Brick Works v. Heard, La.App. 177 So. 494.'
“This question-. arose in Succession of Rhodes, 164 La. 488, 114 So. 107, 109, and was disposed by, the court thus:
“.‘We find no sound objection to the admissibility of the parol evidence admitted in the’ case to show the various items which composed the $6,500. This additional sum is agreed upon by Brown and Mrs. Rhodes' in their written contract as to the purchase of the property.’
“ ‘The purpose of the testimonial proof was not to invalidate the written agreement between Brown- and Mrs. Rhodes, or the subsequent a'ct of sale made between the same parties, but was merely to show the true consideration for same, and was clearly admissible for that purpose. R.C.C. Act’1900; Loranger v. Citizens’ National Bank of Hammond, (No. 26291 on our docket). 162 La. 1054, 111 So. 418.’
“See, also, Green v. Louisiana Highway Commission et al. (La.App.) 13 So.2d 236; Morris v. Morris, (La.App.), 160 So. 134; Ryals v. Ryals, [La.App.], 199 So. 481.”
The plaintiff and his wife testified that the defendant had not paid anything on his rent but that he was indebted to the plaintiff on an open account in the sum of $343.48 and that he had paid on this amount $150 by check, cash $150, and cash $40,' paid‘in two installments of $20 each, and that he, the plaintiff, was indebted unto thé defendant for merchandise bought in the" sum of $19.60 which overpaid defendant’s amount $16.12, which the plaintiff had credited -on the Yent which he claimed defendant 'owed him-, leaving defendant owing plaintiff the amount sued for herein. Plaintiff claims that the check for $150, dated August 12, 1948, is the one given him oil -account. The- defendant, on the other hand, contends that this $150 check represented a loan made by him to the plaintiff and that plaintiff, further owed him $60.95 for merchandise. Hence the «conventional demand for $210.95 -plus the $750 damages, or a total of $960.95,
*150 The defendant, having plead payment as a defense, admits the indebtedness and carries the burden of proving payment. See Alexander v. Paul, La.App., 18 So.2d 852; Louisiana Tractor & Machinery Co. v. Henry, La.App., 24 So.2d 188.
The' defendant and his wife testified that on December 23rd, the day of the sale, the defendant had $1,000 in his pocket, and that on the next day he added this amount to the $3,000 obtained by cashing a check, and paid the $4,000 consideration in full to 'the plaintiff. It is strange, if the defendant had $1,000 in cash in his pocket on the 23rd of December, that he did not give it to Mr. Broussard rather than a worthless check for $1,000 to show 'his good faith. Defendant also testified that this $1,000 cash which he had in his pocket came from the sale of rice made to Lloyd Simon, and produced Lloyd Simon as a witness in the case. The-trial court has excellently analyzed and correctly summed up the testimony of this witness and we, therefore, quote from his opinion: " * * * It is true that Mr. Lloyd Simon testified in behalf of defendant that he purchased some seed rice from defendant on December 5, 1947, for the price and sum of $980.00 cash. The court is satisfied that this witness is mistaken as to the exact date that he bought this rice! This young man’s testimony is to the effect that on the fifth day of December 1947 he bought seventy sacks of seed rice from defendant at $14.00 per" sack and paid him $980.00 in cash. He said that he had seen the defendant’s father in November for the rice and he sold him the rice and he, the witness, got the rice from the father’s house on December 5th; that the rice was hauled in defendant’s truck to Simon’s Warehouse to be carter disc. He was cross-examined very closely by plaintiff’s counsel with reference to the time that the. rice was delivered to Simon’s Warehouse and denied that the rice was delivered to Simon’s Warehouse on February 21, 1948. The Court at the time believing this testimony to be very important propounded the following questions to the witness:
“Q. Was the rice paid for the day it was delivered, Mr. Simon? A. That’s right, sir.
“Q. Was it delivered the same day that you bought it? A. When he had time to bring the rice me and my hired man helped another man haul the rice.
“Q. It was delivered to you the same day you bought it? A. The same day I paid him it was brought to the Simon Warehouse.
“Q. It was brought to the Simon Warehouse? A. Yes, sir.
“Q. After it was delivered in the Simon Warehouse, you paid him? A. Yes, sir,, in cash.
“Later during the trial this witness was recalled to the witness stand, and testified as follows:
“ ‘Recross Examination
“ ‘By Mr. Deshotels:
“ ‘Q. Mr. Simon, on your cross examination a while ago, you stated that the rice-had been delivered to Mr. S. P. Simon’s Warehouse on or about December 5, 1947.. Since that time, 'have you had an opportunity to refresh your memory? A. Yes,, sir.
“ ‘Q. Do you know whether or not the-rice was delivered on December 5, 1947? A-It was brought February 21, 1948.
“ ‘Redirect Examination
“ ‘By Mr. Dalferes:
“ ‘Q. But Mr. Simon, what I am interested in knowing, when did you pay Mr. Ellic Meaux the $980.00 which was the-sale price of the rice? A. I paid him December 5th.
“‘Q. Of 1947? A. 1947.’”
“It is inconceivable that this witness or any one else would pay the large sum of $980.00 to another for seed rice on December 5, 1947 without taking any receipt- or other evidence or acknowledgement and. wait until the twenty-first of February before obtaining the delivery of the property.. It is possible but n-ot probable.”
“I have come to the conclusion that the seed rice in question was bought, paid for *151 and delivered on February 21, 1948. A circumstance which has assisted me in reaching this conclusion is the fact that the check for $1,000.00 which was offered and filed in evidence is dated February 21, 1948, the very day the rice was delivered at the warehouse, thus substantiating young .Simon’s testimony given in answer to the ■Court’s questions that the rice was deliv■ered in Simon’s Warehouse and then paid for by him.”
“Although the evidence shows that Mr. Alcide Meaux, the father of defendant was present and assisted in delivering the seed rice to young Simon, he was not called as a witness to testify. This is another circumstance to be taken into consideration in reaching a conclusion herein.”
On the other hand, plaintiff, besides the testimony of himself and his wife to substantiate his claim proved by the deputy sheriff Louis Trahan, who served the papers in- this suit upon the defendant, that the defendant at that time told the deputy that “he sold a combine and the next day he could pay this out. * * * After I got in the office I told Deshotels (attorney for plaintiff) that I 'had 'brought Meaux .in and Mr. Meaux didn’t tell Deshotels about the combine but he told me and I told Mr. Deshotels that Mr. Meaux said, the next day he could straighten this out, he could get his money from Crowley, that’s what the man told me. Mr. Deshotels in turn asked ‘was that right,’ and Mr. Meaux says - ‘yes, sir/ ”
The defendant attempted to deny this statement by saying that if plaintiff could prove .he owed it he would pay it. We are convinced that the defendant did admit the debt in the manner stated by the. Deputy .Sheriff. This belief is strengthened by -reason of the fact that the defendant was allowed to keep his business open three days which was to .give 'him time to straighten the matter out as he said he would. Certainly, there would have been -no other reason for counsel for plaintiff to agree to allow the defendant to continue ¡to operate his business.
Furthermore, plaintiff has proven by disinterested witnesses that on numerous occasions throughout the- entire year 1948 he 'hád asked the defendant to pay his rent, and these witnesses never heard the defendant deny owing the rent. Plaintiff also produced a witness, Willy Guidry, who testified that he was a customer of the defendant and that bn a visit to the saloon he heard the" defendant make the remark that he had sent' $150 to Mrs. June Daftez, wife' of plaintiff, which is corroborative of the testimony of plaintiff and his wife, rathe,r than defendant’s contention that he had- loaned the plaintiff $150. There is no proof in the record other than the defendant and his wife that they had loaned the plaintiff $150.
Taking all the testimony offered by the defendant', he had certainly failed to prove payment, whereas we are of the opinion that the plaintiff has proven by a preponderance of the testimony that he is entitled to judgment as prayed for..
It is ordered that the judgment of the District Court be affirmed.
ROBERT D. JONES, J., sitting ad hoc.