344 So.2d 95 (1977)
RALSTON PURINA COMPANY, Plaintiff-Appellee,
v.
Norman J. CONE, Jr., et al., Defendants-Appellants-Appellees.
No. 13171.
Court of Appeal of Louisiana, Second Circuit.
March 21, 1977.
*96 Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley and Frank M. Walker, Jr., Shreveport, for defendants-appellants Henry S. Matthews, Clerk of Court, and Underwriters at Lloyd's.
Cook, Clark, Egan, Yancey & King by Sidney B. Galloway, Shreveport, for plaintiff-appellee Ralston Purina Co.
Campbell, Campbell & Johnson by John T. Campbell and John D. Johnson, Minden, for defendants-appellees Norman J. Cone, Jr. and James Walter Frazier.
Before PRICE, HALL and JONES, JJ.
HALL, Judge.
Plaintiff, Ralston Purina Company, filed suit to foreclose a mortgage held by it affecting certain lots in Pleasant Lake Estates Subdivision, Webster Parish. Named as defendants were Norman J. Cone, mortgagor of the property; James Walter Frazier, who bought the property from Cone; and the Clerk of Court of Webster Parish, who had erroneously cancelled the mortgage on the mortgage records. Frazier filed a third party petition against the Clerk and his liability insurer, Underwriters at Lloyd's, seeking to recover any damages resulting from the foreclosure suit.[1] Frazier had purchased the property in reliance on the public records which showed the mortgage as cancelled and on a mortgage certificate issued by the Clerk which did not list the Ralston Purina mortgage but listed only a $25,000 vendor's lien and mortgage granted by Cone to Northwest Louisiana Milling Company, Inc.
After trial, judgment was rendered (1) in favor of plaintiff against Cone for $45,200, the balance of the indebtedness secured by the mortgage; (2) in favor of plaintiff against Frazier, recognizing the mortgage as superior to the rights of Frazier and *97 ordering it enforced against the property; and (3) in favor of Frazier against the Clerk and his insurer for $20,650, the value of the property as determined by the district court.
The Clerk and his insurer appealed suspensively. Third party defendants contend on appeal that (1) Frazier has suffered no injury or loss because the value of the property is less than the amount of the outstanding $25,000 vendor's lien and mortgage; (2) alternatively, the measure of Frazier's damage is the purchase price of the property which he failed to establish; (3) alternatively, the award should not exceed the value of the property, which was established at an amount substantially less than the value found by the trial court; and (4) the amount Ralston Purina would take to release the property from the mortgage is irrelevant and is not an appropriate measure of damages.
In support of the result reached by the trial court, third party plaintiff contends that (1) the proper measure of his damages is the amount Ralston Purina would take to cancel the mortgage, which amount is the appraised value of the property, that is, $20,650; and (2) alternatively, the proper measure of damages is the value of the property, which the trial court found to be $20,650.
All parties concede that in spite of the erroneous cancellation of the mortgage from the mortgage records by the Clerk of Court and the purchase of the property by a third party relying on the public records which showed the mortgage to be cancelled, the mortgagee is entitled to enforce it against the mortgaged property. National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App.2d Cir. 1967), writ refused 250 La. 467, 196 So.2d 533 (1967).
The statutory basis of the Clerk's liability is LSA-C.C. Art. 3394 which provides:
"The register of mortgages and the parish recorders performing the same duty, are answerable for injury resulting:
1. From omitting to record such acts as are directed to be recorded in their office.
2. From omitting to mention in their certificates one or several acts existing on their registers, unless in this latter case the error proceeds from a want of exactness in the description, which can not be imputed to them.
"Each register of mortgages and/or parish recorder shall obtain and maintain in effect at all times liability insurance to cover any such errors and omissions which may occur in his office. Any amounts deductible from the coverage of such insurance shall be payable out of his clerk's salary fund.
"All judgments rendered against the register of mortgages and/or the parish recorders by reason of the liability provided by this article shall be payable out of the clerk's salary fund."
The question to be decided in this case is the extent and amount of "injury resulting" from the actions of the Clerk.
Third party plaintiff bought the property in reliance upon the public records and upon the Clerk's mortgage certificate showing the only encumbrance to be the $25,000 vendor's lien and mortgage. The actual existence of the Ralston Purina mortgage affecting the property and the enforcement of that mortgage has effectively caused the eviction of third party plaintiff. As between the seller and the purchaser there has been a breach of the warranty against eviction. As between the Clerk and the purchaser there has been a breach of the Clerk's statutory duty resulting in the eviction of the purchaser. The relationships are closely analogous and the resulting injury to the purchaser is one and the same.
The Civil Code specifically establishes the rights of the buyer against the seller in case of eviction. Article 2506 provides:
"When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:
1. The restitution of the price.
2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.

*98 3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
4. The damages, when he has suffered any, besides the price that he has paid."
By analogy, the measure of damages provided by Article 2506 should control the damages recoverable by third party plaintiff from the Clerk in this case. Principally, the measure of damages is return of the purchase price paid by Frazier to Cone for the property from which he is being evicted.
The property affected by the Ralston Purina mortgage was purchased by Frazier as part of a rather unusual transaction in which Cone, joined by Northwest Milling, conveyed to Frazier several tracts of land containing approximately 1,000 acres. The transferors agreed to discharge several mortgages affecting the property conveyed, including the $25,000 vendor's lien and mortgage affecting the Pleasant Lake lots. The consideration stated included the transfer of certain preferred stock in Northwest Milling by Frazier and his payment and agreement to pay certain amounts to and for the account of the transferors. The purchase price attributable to the property involved in this suit cannot be determined from the instrument and neither side offered any evidence beyond the instrument to establish the actual purchase price.
LSA-C.C. Art. 2514 provides:
"If in case of eviction from a part of the thing, the sale is not canceled, the value of the part from which he is evicted, is to be reimbursed to the buyer according to its estimation, proportionably to the total price of sale."
Frazier is being evicted from part of the property purchased by him. Since the purchase price attributable to this property cannot be determined, the measure of loss is the value at the time of purchase of the part from which he is evicted.
Two appraisers testified at the trial. One estimated the value at not more than $12,635. The other estimated the value at $20,650. The trial court found the latter estimate corroborated by prices of previous sales of lots in the subdivision and found the fair market value of the property to be $20,650. Both appraisers testified as to value at the time of their appraisals shortly before trial, but it was established that the property had not appreciated much since the time of purchase. The trial court's finding as to value was reasonable on the basis of the evidence presented and will not be disturbed by this court.
Third party defendants argue that the property, valued at $20,650, is subject to a vendor's lien and mortgage of $25,000 and, therefore, has no value to Frazier. By losing the property, they argue, Frazier has suffered no loss or damage.
The $25,000 vendor's lien and mortgage, granted by Cone to Northwest Milling, dated November 29, 1967, payable in monthly installments of $1,000 each beginning December 27, 1967, has not been cancelled from the mortgage records. However, the note secured by the vendor's lien and mortgage is prescribed on its face. There is no evidence that the note is unpaid or that it is presently held by anyone other than the payee, Northwest Milling, who was one of the transferors who guaranteed its discharge.
Even if the existence of a secured indebtedness is a relevant consideration in determining third party plaintiff's damages, which it is not necessary to decide, the evidence does not establish the existence of a viable, unpaid encumbrance against the property or that the value of the property or Frazier's loss is diminished by reason of the vendor's lien and mortgage.
For the reasons assigned, the judgment of the district court is affirmed at appellants' costs.
Affirmed.
NOTES
[1] On a previous appeal in this case, this court held that third party plaintiff has a direct action against the Clerk's insurer under LSA-R.S. 22:655. Ralston Purina Company v. Cone, 304 So.2d 735 (La.App.2d Cir. 1974).