361 So.2d 905 (1978)
Louise LANGENDORF, Stella Trauth, Agnes Roniger, George G. Braquet, Peter E. Braquet, Regina Braquet, Fannye Braquet and Louis J. Braquet
v.
The ADMINISTRATORS OF the TULANE EDUCATION FUND.
No. 9196.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 1978.
Rehearings Denied September 12, 1978.
Writs Refused October 26, 1978.
*907 Henry L. Klein, New Orleans, for plaintiffs-appellees.
Chaffe, McCall, Phillips, Toler & Sarpy, C. Manly Horton, Jr., New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and BOUTALL, JJ.
LEMMON, Judge.
Defendant has appealed from a judgment which found it had breached its fiduciary duty as succession representative of the Succession of James Rogers and awarded plaintiffs, Rogers' collateral heirs, the value of certain vacant land in Florida which Rogers owned at the time of his death and which was subsequently lost for nonpayment of taxes.

I
James Rogers died in March, 1959. His will left his entire estate to defendant and also named defendant as executor of his estate.[1] When an inventory revealed the Florida land as a succession asset, defendant's attorney contacted a Florida lawyer, seeking to have an ancillary administration so that defendant could be placed in possession of the property there. After some correspondence the Florida lawyer advised that under Florida law the will was invalid in form and could not pass title to Florida real estate, but suggested that since Rogers had no heirs (a fact stated by defendant's attorney in an earlier letter), defendant could acquire ownership by not paying the taxes on the property and then buying the property at a tax sale.
At trial defendant's attorney insisted he was unaware that Rogers had any heirs when he first contacted the Florida lawyer, but admitted he learned in November, 1959 that plaintiffs were Rogers' heirs. He further stated that he told plaintiffs' then attorney of their claim to the Florida land, but he did not write a letter with this advice, nor did he attempt to administer the property for their benefit.
*908 Defendant purposefully did not pay the 1959 taxes, and in May, 1960 the Florida attorney purchased the property at tax sale on behalf of defendant.
In September, 1960 defendant filed a petition in the succession, alleging there was "no further need for any additional administration", and judgment was rendered recognizing defendant as universal legatee and placing defendant in possession of "all of decedent's property wherever situated", although the Florida property was not included in the itemized descriptions.
Defendant subsequently failed to pay the taxes on the Florida land in 1962, 1963 and 1964, and the land was again sold for taxes in 1965.

II
Defendant contends it did not qualify as executor in Florida or in Louisiana and therefore owed no duty to the heirs to place them in possession of the Florida property. It further argues that succession property in two states is to be administered separately, as if there were two successions, and that even if it had qualified as executor in this state, a Louisiana court could not give authority to act in that capacity with respect to Florida property.
Defendant's emphasis on lack of issuance of letters testamentary is misplaced. Acting in the succession proceedings on its appointment by will as executor, defendant had the will probated, obtained life insurance policies from the bank box and collected the proceeds thereof, and petitioned for a declaratory judgment (against plaintiffs) to declare the invalidity of a prohibition in the will against alienation of the real estate. Under the mandate defendant actively administered the Louisiana property and attempted to administer the Florida property, although never technically recognized as executor in either state, until no "additional administration" was necessary. A succession representative who is appointed as such in a will and by its action thereafter accepts the fiduciary position and undertakes to act as such, cannot escape liability for breach of a fiduciary duty on the basis that the representative failed to obtain judicial confirmation of its authority to act in this capacity.[2]
As to the issue of duty, a succession representative, whether executor or administrator, has the duty to collect all property of the succession. C.C.P. arts. 3191, 3211. He has the further duty to preserve and manage the succession property as a prudent administrator. C.C.P. arts. 3191, 3221. Included in the latter is the duty to make necessary expenditures for preservation, such as payment of taxes. Succ. of Rhodes, 164 La. 488, 114 So. 107 (1927). And when all of the succession property is not disposed of by will, the succession representative has the duty to collect and preserve the remaining property for the legal heirs.
After learning it had no claim to the Florida land through the will, defendant devised a scheme to otherwise acquire ownership for itself. And while the scheme may have commenced without knowledge that plaintiffs were the legal heirs to the property, the scheme was accomplished after defendant's attorney acquired this knowledge.[3]
Defendant's contention that it had no interest in the Florida land after learning of the invalidity of the will there is correct as to its interest as legatee, but under the circumstances of this case defendant could not simply disclaim any further responsibility as executor when it had never declined that mandate and in fact had tacitly accepted the appointment. Defendant had the duty at least to inform the *909 legal heirs of their claim to the property and to preserve the property for a reasonable time thereafter so that the heirs could pursue their rights. And certainly defendant had a duty not to contrive a method of depriving the legal heirs of their claim to ownership.
The record supports a conclusion that defendant breached that duty. Defendant's attorney's statement that he told the heirs' attorney in 1959 or early 1960 of their claim was denied by the latter, to the extent that he had no such recollection and no record of this information. The statement, furthermore, was inconsistent with defendant's actions thereafter in neglecting to pay the taxes for the purpose of taking advantage of the nonpayment and then acquiring ownership for itself by buying the property at a tax sale. The trial court's finding of a breach was not manifestly erroneous.

III
Defendant alternatively contends that any breach on its part amounted to a tort and that the cause of action prescribed in one year.
Plaintiffs' initial cause of action was essentially one to recover the Florida land.[4] When defendant failed to collect and preserve the Florida land for the legal heirs, but instead collected it for its own benefit, it breached its fiduciary duty and owed the heirs the return of the land (a possibility eliminated by the subsequent negligent failure to pay the taxes).
In an action founded upon the quasi-contractual obligation arising from the fiduciary relationship, the prescriptive period to compel a fiduciary to account for the property held in trust is ten years. Bills v. Pittman, 152 La. 907, 94 So. 439 (1922). Furthermore, in Hall v. Courtney, 184 La. 80, 165 So. 458 (1935), a suit by an emancipated minor against her tutor's succession to recover property received by the tutor for the minor's account, the court observed that the nature of the cause of action came under C.C. art. 2292 and was a personal action which prescribed in 10 years.[5]
Prescription generally begins to run at the time of the occurrence of the facts which give rise to the cause of action. However, prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, as long as such ignorance is not willful and does not result from his neglect. Dean v. Hercules, Inc., 328 So.2d 69 (La.1976).
In the present case plaintiffs were not aware defendant had acted contrary to its duty to preserve the Florida property for them as legal heirs until less than 10 years before this suit was filed. Moreover, there is no suggestion plaintiffs' ignorance of this breach of duty was willful or resulted from their neglect. The exception of prescription was properly overruled.

IV
The trial court awarded $10,000.00, representing the value of the property when it was lost for taxes in 1965.
The basic theory of reparation is that the damaged party should be returned as nearly as possible to his condition prior to the act which caused the damage. In the present case defendant's obligation would *910 have been to return the property if plaintiffs had become aware of their rights prior to 1965 when the property was lost for taxes, and there would have been no need to measure recovery in monetary terms. Once the property was lost, however, defendant's obligation was to pay plaintiffs the value of the land or the amount necessary to purchase the same or similar land.
Generally, the amount of recovery for property lost or destroyed is the value at the time of the loss, which is the earliest time the damaged party can file suit for recovery of a monetary award. The theory is that it would be inequitable to allow a claimant to delay asserting a cause of action, once it arose, and then receive the advantage of a subsequent enhancement in value. After the time a cause of action arises on an obligation for payment of money, the damages due for delay in the performance of an obligation to pay money are measured as interest. C.C. art. 1935.
Before 1965 plaintiffs could not have filed suit for recovery of a monetary award, because they were not yet aware they had been deprived of their claim to ownership of the Florida property. The record does not establish exactly when they thereafter learned of this claim, but in the absence of proof of a different time the date of the loss by tax sale in 1965 was properly used.
Defendant presented an appraisal of $8,000.00, and plaintiffs presented one of $12,000.00. While defendant's appraisal was more detailed and its appraiser had more impressive qualifications, we cannot say the trial court erred in setting the 1965 value at $10,000.00.

V
Plaintiffs' request for attorney's fees, reasserted by answer to the appeal, was properly denied.
Attorney's fees are generally awarded pursuant to a statute or a contract. Fees have been awarded as damages under exceptional circumstances, such as in Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972), in which the attorney's fee incurred to correct another attorney's professional error was awarded as an item of damages in a legal malpractice action.
The present case is not a legal malpractice case, and the breach of duty was not committed by a lawyer in a contractual relationship with plaintiffs, but by a succession representative in a fiduciary relationship.
The judgment is affirmed.
GULOTTA, J., concurring in part and dissenting in part.
GULOTTA, Judge, concurring in part and dissenting in part.
I concur in the majority's conclusion that Tulane breached its fiduciary duty, but I dissent from that part of the judgment which awards plaintiffs the value of the property at the time of loss (the tax sale) rather than the value at the time of trial.
LSA-C.C. art. 1934(2) provides:
"When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract . . .."
Though it is true plaintiffs' case is one in quasi-contract rather than contract, the Codal provision is applicable. Tulane was in bad faith. But for its action these plaintiffs would be entitled to ownership of this real estate. Since the property is now owned by a third party, plaintiffs' only adequate relief is judgment for the value of the property at the time of trial. To deprive plaintiffs of the real estate's appreciation in value since the date of the tax sale which resulted from Tulane's bad faith is an inequitable result.
Accordingly, I would amend the judgment to award plaintiffs the value of the property as of the date of trial. See Dissent in Womack v. Sternberg, 247 La. 566, 172 So.2d 683 (1965).
NOTES
[1] This will was the subject of two previous lawsuits. See Succ. of Rogers, 138 So.2d 251 (La.App 4th Cir. 1962), and Braquet v. Administrators of Tulane Educ. Fund, 304 So.2d 720 (La.App. 4th Cir. 1974).
[2] This is true even with regard to the Florida property, notwithstanding that defendant could not have qualified under the will as executor there and that it had no judicial authority to act in that state. Defendant undertook, as succession representative, to commence ancillary proceedings in Florida and in that capacity learned that the true owners of the Florida property were the testator's legal heirs.
[3] After filing suit against plaintiffs for declaratory judgment in December, 1959, defendant authorized the Florida lawyer in April, 1960 to proceed with the tax sale "arrangement".
[4] If defendant had continued to pay the taxes and still owned the property, the claim would still be one for ownership. Plaintiffs were subsequently relegated to a cause of action to recover the value of the property because defendant lost the property for taxes.
[5] C.C. art. 2292 provides:

"Certain obligations are contracted without any agreement, either on the part of the person bound or of him in whose favor the obligation takes place.
"Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
"The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature.
"The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi-offenses." (Emphasis supplied)