LOBRANO, Judge.
On April 16, 1970, Allen Swayne purchased two lots of ground from the heirs of Buford Stokes, namely Richard Stokes, Buford Stokes, Doris Stokes Brown, Melvin Stokes and Lillie Mae Stokes McGee, by act before Myrtis C. Broussard, Notary Public. The notary did not obtain the required tax research certificates and there was no waiver of same by Swayne. The City of New Orleans taxes for the year 1970 were not paid, and Jackson Title Corporation purchased the subject property at tax sale on November 19,1971. On May 22,1978 Jackson Title Corporation filed this lawsuit to confirm and quiet its tax title. Swayne filed a third party demand against Brous-sard, the Notary, and Paula Feeney, the Surety on the notarial bond. Broussard and Feeney then third partied the assessor, James W. Smith alleging failure to properly assess the property, and Charles A. Kron- *692 lago, Jr., the city notary for failing to provide the assessor with a copy of the tax deed to Jackson Title Corporation. The trial court entered judgment in favor of Jackson Title confirming their title to the property, and in favor of Allen Swayne on the third party demand against Broussard and Feeney, in the amount of $5,500.00, the original purchase price. The demands against Smith and Kronlage were dismissed.
The notary and surety filed this appeal alleging that the tax sale to Jackson Title was an absolute nullity, and therefore the Court erred in confirming the title. Alternatively, they claim that should the tax title be valid, then the loss of the property was not caused by the Notary’s negligence but by the negligence of the assessor in failing to properly assess same and the city notary in failing to provide the assessor with a copy of the tax title. Swayne appealed on the basis that he should have been reimbursed for the value of the property as of May 22,1978, the date he learned of the tax sale to Jackson Title, rather than the original purchase price.
It is clear that by virtue of Article X, Section 11 of the Constitution of 1921, and Article VII, Section 25 of the Constitution of 1974, the only defense to a tax sale after the deed has been of record for a period of more than five years is proof of prior payment of the taxes for the year in which the property was adjudicated. La. Const, of 1921, Art. X, Sec. 11; La.Const. of 1974, Art. VII, Sec. 25; Cortinas v. Murray, 224 La. 686, 70 So.2d 589, (1954); Laventhal v. Lake Investment Corp., 252 So.2d 521 (La.App. 4th Cir.) In their brief, appellants (Notary and surety) claim that the property was assessed to Buford Stokes in 1970, but since Buford Stokes had died in 1964, and his heirs placed in possession, the property should have been assessed in the heirs’ names. Since this was not done by the assessor, they argue, the tax sale was void because the assessment was not in the name of the record owner. In support thereof they cite Hubbs v. Canova, 401 So.2d 962 (La.1981). First, we point out that Buford Stokes, Jr. is one of the heirs of Buford Stokes, and as such is a legal owner of the property, therefore the assessment did name a record owner. More important, however, is the constitutional five year preemptive period. The tax sale was recorded on February 18, 1972, and the confirmation suit was filed on May 22,1978. The Hubbs case, supra, does not support appellant’s contention with respect to the five year preemption period. That case dealt with a poor description in the assessment which made the property unidentifiable. The Court concluded that “an assessment which purports to assess unidentified land is not valid”. Hubbs v. Canova, 401 So.2d 962, 964 (La.1981). That situation does not exist in the present case, and therefore we agree with the trial court in confirming the tax title of Jackson Title Corporation.
We are compelled to affirm the trial judge’s decision finding the notary negligent. It is a requirement that a notary, in passing an act of sale, obtain clear tax research certificates and annex same to his act. In Orleans Parish, he is prohibited from passing said acts unless the taxes due thereon are paid. La.R.S. 9:2921, et seq. Appellant Swayne employed the notary, Broussard, to pass the act of sale by which he acquired the subject property. The notary failed to obtain the necessary tax certificate, thus breaching the duty she owed Swayne. As a result, Swayne was not put on notice of the delinquent 1970 taxes and consequently the property was lost at tax sale.
The more important issue is the question of quantum. Appellant Swayne argues that the trial court erred in awarding him only the return of his purchase price, rather than the value of the lost property as of May 22,1978, the date which he learned of the loss. In support of this contention, Swayne relies on Langendorf v. Administrators of Tulane Educational Fund, 361 So.2d 905 (La.App. 4th Cir. 1978). In Langendorf, the succession representative failed to pay the taxes on certain lands owned by the decedent in the State of Florida. As a result, the property was sold for *693 unpaid taxes in 1965, and subsequently purchased by an attorney for the succession representative. The heirs brought suit for breach of fiduciary duty, and this Court held the succession representative responsible. The heirs were awarded the value of the property as of the time of tax sale in 1965. In so doing, we stated:
“Generally, the amount of recovery for property lost or destroyed is the value at the time of the loss, which is the earliest time the damaged party can file suit for recovery of a monetary award.” Langendorf v. Administrators of the Tulane Education Fund, 361 So.2d 905 (La.App. 4th Cir. 1978), at p. 910
We then stated that the plaintiff heirs could not have filed suit for recovery prior to 1965 because they had not yet been aware of their claim to ownership of the Florida property.
We are compelled to hold differently in the case at bar, and will distinguish the reasoning of Langendorf in that regard. This case must be analogized to an action of a buyer against a seller in case of eviction. Civil Code Article 2506 provides:
“When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:
1. The restitution of the price.
2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.
3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
4. The damages, when he has suffered any, besides the price that he has paid.”
The Second Circuit, in RalsCo. v. Cone, 344 So.2d 95 (La.App. 2nd Cir. 1977), analogized Article 2506 with an action brought against a Clerk of Court for failing to show an encumbrance on his mortgage certificate. In that case, a purchaser of property subject to a mortgage in favor of Ralston Purina, relied on the mortgage certificate which failed to show that encumbrance. As a result, the purchaser subsequently lost the property through foreclosure proceedings brought by the mortgagee. In those proceedings, the purchaser third partied the clerk of court for failing to list the Ralston Purina encumbrance on his certificate. The clerk was held responsible, and in so deciding, the Court stated:
“By analogy, the measure of damages provided by Article 2506 should control the damages recoverable by third party plaintiff from the Clerk in this case. Principally, the measure of damages is return of the purchase price paid by Frazier to Cone for the property from which he is being evicted.” id. at 98.
This reasoning is applicable to the present case. Appellant-third party plaintiff, Swayne, seeks recovery from the negligent notary for his eviction from the subject property. His action is very similar to those of a buyer against a seller in an action of warranty. The remedies provided a buyer in Article 2506 should be applicable in the present case. We are not constrained to give the appellant the benefit of inflationary economic cycles, just as we would not be constrained to penalize him for deflationary cycles should the Code have provided a remedy different than return of the purchase price. In this regard, it is noteworthy to point out that the redactors of our Civil Code failed to include Article 1633 of the French Code, which provides:
“If the thing sold has increased in price at the time of eviction, even independently of any act of the acquirer, the vendor is bound to pay him what it is worth above the price of the sale.”
As explained by the writer in 17 La.L.R. 253 at p. 260:
“In omitting this Article (French Code Art. 1633) from our Code, the redactors said in explanation that it was ‘evidently dangerous and might cause ruin of a vendor selling in good faith, in a country where fluctuations in value are so great.’ ” Parenthesis added.
We agree that this is the better view, and affirm the trial court’s award of the return *694 of the purchase price. We distinguish the reasoning of Langendorf because in that case the plaintiff heirs did not purchase the subject property, and then subsequently lose same by the negligence of the tort-feasor. They had a claim to the property by virtue of the inheritance laws of Florida and lost that claim by virtue of the deliberate actions of the succession representative in attempting to secure the property for himself. These facts can not be analogized to the buyer-seller case of eviction. The tortfeasor in Langendorf was in bad faith and the plaintiff heirs did not purchase the property in reliance on his (the succession representative) actions.
Appellants, Broussard and Feeney, argue that the assessor should be held responsible for failing to properly assess the subject property, and that the City Notary should also share the responsibility for failing to provide the assessor with a copy of the tax sale to Jackson Title. The proximate cause of the loss of the property was the failure to pay the 1970 city taxes. This would have been cured had the Notary fulfilled her obligation to provide tax certificates, which she did not. The loss was caused by that negligence, and that negligence alone. Hence, it is unnecessary to decide the issues raised against the Assessor and City Notary.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
SCHOTT, J., dissenting in part with reasons.