294 So.2d 512 (1974)
Succession of George E. BUTLER.
No. 53920.
Supreme Court of Louisiana.
April 29, 1974.
*513 Charles A. O'Niell, Jr., Tucker & Schonekas, New Orleans, for plaintiff-applicant.
Dudley D. Flanders, Flanders & Flanders, New Orleans, for defendants-respondents.
SUMMERS, Justice.
Plaintiff is the law firm of Tucker and Schonekas. It has instituted this suit against the succession of George E. Butler, deceased, and his surviving widow Irene Campbell Butler, praying for judgment against the succession and the surviving widow in solido to enforce the payment of a ten percent attorneys' fees contract due for services rendered to Mrs. Butler. Judgment was rendered in the trial court awarding attorneys' fees in the amount of $25,000, less a credit of $1,500 paid on account. The Court of Appeal reduced the award to $12,000, less the $1,500 credit. 281 So.2d 189. On plaintiffs' application we granted certiorari. 283 So.2d 768.
The written contract of employment entered into between plaintiff and Mrs. Butler in September 1964 has been lost. Plaintiff asserts, however, that the contract's terms and conditions are set forth in a motion to reinstate plaintiff as her counsel filed by her in the separation suit. According to the motion, J. Gibson Tucker, Jr., of the plaintiff law firm, was employed by Mrs. Butler as her attorney to represent her in the suit for separation from bed and board,
"Said representation to be on a 10% contingent fee on any and all assets recovered for mover from the community of acquets and gains which heretofore existed between mover and the defendant George Edwin Butler, and with neither mover nor her attorney to have the right to settle or compromise any interest in the property proceedings without the consent of the other ...."
Acting in accordance with their mandate as counsel, plaintiff instituted suit on behalf of Mrs. Butler in September 1964 against her husband for separation from bed and board on the ground of cruel treatment. The suit also sought alimony and dissolution of the community, together with an injunction against the husband to protect the community property against alienation.
The validity of this contract of employment is the first issue the case presents. As we read the contract, plaintiffs' fee is contingent upon recovery of assets for Mrs. Butler from the community of acquets and gains between her and her husband. To accomplish this result on her behalf either plaintiff had to obtain a separation *514 from bed and board or divorce between the parties to dissolve the community, or, as happened here, one of the spouses must die. By the terms of the contract neither Mrs. Butler nor her attorney had the right to settle or compromise any interest in the property without the consent of the other.
Despite the fact that plaintiff would have the contract considered as one designed for the protection of the wife's interest in the community estate and not one the payment of which is contingent upon a decree of separation from bed and board or divorce, the fact is the contingency upon which the payment of the fee is predicated is the separation or divorce decree. Such a decree must be rendered before Mrs. Butler can "recover" assets from the community of acquets and gains. As such the contract offends public policy.
The law's attitude toward the marriage relation has been stated as follows: "Public policy, good morals, the highest interest of society require that the marriage relations should be surrounded with every safeguard and their severance allowed only for the causes specified by the law, and clearly proven." Halls v. Cartwright, 18 La.Ann. 414 (1866). See also Barringer v. Dauernheim, 127 La. 679, 53 So. 923 (1911). The Civil Code declares that "individuals cannot by their conventions derogate from the force of laws made for the preservation of public order or good morals." La. Civil Code art. 11. See also La. Civil Code art. 1758(1), 1892. In keeping with this policy of the law, every attempt should be made to reconcile estranged couples. Meyer v. Howard, 136 So.2d 805 (La.App.1962). Though stated more than a century ago, the policy remains fundamentally unchanged.
In McMahon v. Hardin, 10 La.App. 416, 121 So. 678 (Orl.App.1929), the Orleans Court of Appeal (now Fourth Circuit) cited with approval a statement from 2 Elliott on Contracts ¶ 753 to the effect that an agreement by which a wife undertakes to pay her attorney, in a suit for divorce and alimony, a certain percentage of whatever property may be awarded her out of her husband's estate is a contract in restraint or derogation of the marriage relation and it is for that reason void. La. Civil Code art. 1892. This view prevails in most jurisdictions. 7 Am.Jur.2d, Attorneys at Law, ¶ 217, 7 C.J.S. Attorney and Client ¶ 186; 17 C.J.S. Contracts ¶ 235.
It is not the fact that any evil result grew out of the contract in the case at bar which strikes it with nullity; it is the tendency which approval of such contracts would have to produce evil results in other cases which makes them reprobated by the law.
This contract was unusual in the plaintiff's practice. It could not be recalled that a like contract had ever been used by that firm before. It was undertaken on a contingent basis as an accommodation to Mrs. Butler.
The justification for contingent fee arrangements, that it allows one who could not otherwise afford counsel to procure adequate representation by an attractive fee arrangement, is not applicable to divorce proceedings. Whether the wife's suit is successful or not, the attorney's fees incurred by her become an obligation of the community which her husband must discharge on a quantum meruit basis or the fee must be satisfied from the community estate in the case of dissolution. Goodwin v. Goodwin, 207 La. 690, 21 So.2d 875 (1945); Collins v. Collins, 194 La. 446, 193 So. 702 (1940); Tullis v. Calhoun, 184 La. 207, 165 So. 714 (1936); Snow v. Snow, 181 La. 204, 159 So. 323 (1935); Daly & Hamlin v. Trascher, 163 La. 660, 112 So. 521 (1927); 24 Wash. & Lee L.Rev. 360 (1967). There is therefore no argument to support a contingent fee contract in such cases. The fee is payable in the case of reconciliation as well as in the case of dissolution of the marriage; thus the fee should not be an inducement to either reconcile *515 the parties or dissolve the marital relation. It would in many cases be different if the fee were contingent upon dissolution of the marriage.
Our holding that the purported contingent fee contract is void as against public policy prevents recovery of the ten percent stipulated. Under these circumstances plaintiffs are relegated to recovery in quantum meruit or quasi contract under their alternative demand. Pomes v. Burglass, 169 La. 591, 125 So. 628 (1930); Kirchberg v. Holloman, 248 So.2d 347 (La.App.1971).
The community estate existing between Mr. and Mrs. Butler was valued at $1,436,319.64. If the contract had prevailed plaintiff would have been entitled to $71,815.98, one-tenth of the wife's half interest. The trial court judge, finding the contract to be lost, gave it no effect. Instead he awarded $25,000 on a quantum meruit basis. The Court of Appeal, finding the contract to be against public policy, also made its award on a quantum meruit basis reducing the trial judge's award to $12,000. Both courts allowed a credit of $1,500, an amount previously paid by Mrs. Butler on account.
The suit for separation from bed and board was filed in September 1964. Although a decree of separation was never obtained, the injunction was maintained in effect almost continuously until Mr. Butler's death in 1969. In order to permit the continuance of the businesses affected by the injunction, it was necessary for Mr. Tucker to maintain a constant review of many transactions. At one time during this period Mrs. Butler discharged Mr. Tucker as her counsel. Also during this interval she consented to the dissolution of the injunction. Upon his reemployment it was necessary for Mr. Tucker to have the injunction reinstated.
The businesses which formed the principal assets of the community involved a motor freight company operating throughout the southern United States. The principal corporation in New Orleans had subsidiary or affiliate companies in Jackson, Mississippi; Miami, Florida and Louisville, Kentucky. It was necessary for counsel to inquire into and ascertain whether a full disclosure of these diverse business assets was properly accounted for. While the injunction against alienating the community existed, a change in ownership of the Jackson, Mississippi, affiliate was effected. This transaction came up for review by Mrs. Butler's counsel.
Alimony recovered on behalf of Mrs. Butler during this period amounted to $92,350. Funds in Mrs. Butler's possession at the time of filing suit which were preserved for her use by her counsel amounted to $28,850. The sum of $1,850 was recovered for her for jewelry lost.
All community assets were carefully preserved during the five-year period prior to Mr. Butler's death. In his succession his wife's interest was fully recognized.
In his testimony counsel recounted the many services rendered on behalf of his client during the five years his employment continued. He exhibited a detailed summary of the work done, conferences, court appearances, phone calls, correspondence, etc. Mrs. Butler's concern for the preservation of her share of the community never abated until her husband's death.
This suit for attorneys' fees was instituted against Mr. Butler's succession and Mrs. Butler individually in December 1970 when Mrs. Butler ceased to communicate with plaintiff.
Quantum meruit has been regarded as synonymous with the term quasi contract found in Article 1934 of the Civil Code, the pertinent portions of which prescribe the formula for the assessment of damages for the breach of quasi contracts. In essence the trial judge or jury is vested with much discretion in making such an award. In Miller v. Thomas, 258 La. 285, *516 246 So.2d 16 (1971), we summarized the principle as follows:
"From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the `much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
A prominent attorney with extensive experience as an active practitioner in New Orleans was the only expert witness giving an opinion of the value of the services rendered. In his estimation $50,000 was a fair fee under the circumstances. He properly considered the value of Mrs. Butler's interest in the community, the results accomplished, the time spent on court appearances, pleadings filed and reviewed, conferences held in and out of counsel's office, telephone calls, etc., the skill and competence of counsel, which he knew to be of high quality, and the fees of attorneys of like competence and ability in the community.
With this evidence before him the trial judge awarded $25,000, less a credit of $1,500. We have not been satisfied that the Court of Appeal properly reduced this award. To do so a finding must be made that the trial judge abused the "much discretion" he is granted by Article 1934 of the Civil Code. No such finding is warranted by this record.
A plea of prescription was advanced by the Succession and Mrs. Butler based upon the three-year period prescribed by Article 3538 of the Civil Code, the contention being that any claim for attorneys' fees prior to three years from December 1970, when suit was filed, are prescribed. The contention is made on the assumption that Mrs. Butler discharged plaintiff as her attorneys on June 8, 1966 when a letter to that effect was sent to counsel. Thereafter plaintiff was reemployed on August 8, 1966. Thus there are two separate contracts of employment under this theory, the first being prescribed by the lapse of three years. Only the latter employment, it is contended, need be considered.
The facts are not denied that Mrs. Butler did reinstate the employment of plaintiff, asserting that she was unaware of the fact that she had signed papers for their discharge. These facts, which are not disputed, convince us that a rescission of the employment contract was never intended. Under this view it is as though no rescission ever took place. La. Civil Code arts. 1823, 1824.
Defendants also contend that the "Dead Man Statute", La.R.S. 13:3721, prohibits the use of parol evidence to prove "any debt or liability of a deceased person" when no suit has been brought to enforce the debt within one year of death. Actually this suit is principally against Mrs. Butler who, of course, was alive at the time of its institution. She, as the contracting party, is authorized to engage attorneys and bind the community. This case does not fall within the contemplation of the "Dead Man Statute".
We agree with the contention of defense counsel that in a suit in quantum meruit interest is not allowed from the date of judicial demand. Legal interest should be allowed from the date of final judgment. Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1949); Connette v. Wright, 154 La. 1081, 98 So. 674 (1923).
For the reasons assigned, judgment is rendered herein in favor of the law firm of Tucker & Schonekas, a law partnership comprised of J. Gibson Tucker and Russell J. Schonekas, and against Mrs. Irene Campbell Butler and the Succession of George E. Butler, in solido, in the full sum of $25,000 as attorneys' fees, subject to a credit of $1,500 already paid, together with legal interest at the rate of seven (7%) *517 percent per annum on the amount due from May 25, 1972, the date of judgment, until paid; and for all costs expended in suit No. 427-009, entitled Butler v. Butler, on the docket of the Civil District Court, Orleans Parish; defendants to pay all costs incurred in these proceedings involving the claim for attorneys' fees.
BARHAM, J., concurs in decree only.
DIXON, J., concurs in the result with reasons.
MARCUS, J., recused.
DIXON, Justice (concurring).
I concur in the result in this case. However, I disagree with the discussion of the employment contract and the conclusion that it "offends public policy."