GARRISON, Judge.
This suit was brought by plaintiff, Irion Bordelon, against defendant, Albert Crutch-er, for breach of a written agreement entered into between them in March 1964. Defendant answered the suit and reconvened against plaintiff, alleging a breach of the same contract and a violation of plaintiff’s fiduciary-obligation thereunder. After a trial on the merits, the trial court found that defendant Crutcher had fully performed his duties under the agreement and ruled in his favor on the main demand. However, defendant’s reconventional demand was dismissed.
*1110 Plaintiff has appealed the trial court’s decision on the principal demand, alleging error in the trial judge’s findings of fact and law. Although defendant-appellee, Crutcher, states in brief that he has answered the appeal, challenging the trial court’s dismissal of his reconventional demand, no such answer was filed with the trial court or lodged in this court. Therefore, the only questions presented here are those relating to the main demand.
The facts of this case are basically undisputed. The issues presented deal only with the interpretation of those facts and the interpretation of the agreement between the parties.
In December of 1963 plaintiff Bordelon proposed to defendant Crutcher the possibility of obtaining a farmout agreement from Humble Oil for financing and drilling of oil wells on certain leases in St. Bernard Parish. Bordelon told Crutcher that the prospects were good and he thought that the California Company would agree to finance a portion of the drilling and other costs. Consequently, Crutcher approached Humble with the proposition and they consummated a farmout agreement on January 6, 1964. Under the terms of that agreement, Humble agreed that if production was achieved it would assign a 75% interest to Crutcher until payout, and 60% thereafter.
As expected, the California Company agreed to join the venture and, for 75% of the farmout, put up $50,000 for drilling to 9,000 feet. Any costs above $50,000 were to be borne proportionately by all other parties owning an interest in the farmout. This agreement was reached on January 17, 1964.
Subsequently, Crutcher and Bordelon entered into the agreement which is the subject of this lawsuit. In that agreement Crutcher agreed to assign to Bordelon, as compensation for his role in the deal, a 3% interest in whatever he (Crutcher) might “earn” from these leases. In addition, Bor-delon would assume his proportionate responsibility for the costs incurred.
In May 1964 Crutcher requested that Humble make an assignment of the farm-out interest in the following percentages:
California Oil Co. 75%
Albert B. Crutcher, Jr. 12.5%
J. D. Tufts, II 12.5%
J. D. Tufts, II was Crutcher’s business partner and, as such, shared equally. Accordingly, these assignments were made by Humble in August 1964. No assignment of any amount was made by Humble to Borde-lon.
Bordelon demanded his 3% interest, claiming a 3% interest in the entire farm-out. Crutcher refused and argued that the agreement intended for Bordelon to get only 3% of that 12.5% interest actually received by Crutcher himself. Crutcher made an assignment of that interest to Bordelon in May 1965. Bordelon refused that tender of 3% of 12.5% and filed suit against Crutcher, claiming damages of $25,000 because he was unable to consummate a deal arranged with a Mr. Raymond Miller, whereby Miller was to purchase Bordelon’s 3% interest in the farmout (3% of 75% until payout and 60% thereafter) for $25,000.
The parties here have each interpreted the agreement in question to their own advantage, and the testimony of plaintiff and defendant is in hopeless conflict as to their intentions at the time it was executed. The only issue before the Court, therefore, is the proper interpretation of this contract. The trial court determined that because Bordelon knew of the California Company’s participation in the operation he knew Crutcher would earn only a very small portion of the farmout. Therefore, the trial court found that Bordelon was entitled to 3% of the 25% shared by Crutcher and Tufts, with that 3% to be taken from Crutcher’s share.
At first glance, there are what appear to be irreconcilable arithmetical conclusions reached by counsel for Crutcher and the trial judge. Where Crutcher refers to Bor-delon’s share as 3% of his 12.5% (25% split between Crutcher and Tufts), the trial judge awarded Bordelon 3% of the 15% shared by Crutcher and Tufts. This appar *1111 ent discrepancy, however, is easily explained when it is understood how these different figures were arrived at.
Under the farmout agreement from Humble, Crutcher’s group was to receive 60% of the entire drilling proceeds, and Humble retained a 40% interest. Seventy-five percent of the 60% belonging to Crutcher’s group was allocated to the California Company, and the remaining 25% was divided equally between Crutcher and Tufts. Prom this figure comes Crutcher’s “12.5% interest,” of which he claims Borde-lon is entitled to 3%. On the other hand, the trial court viewed the entire drilling operation as 100%, allocating the shares as follows:
Humble Oil 40%
California Company 45% [= 75% of 60%]
Crutcher 7.5% [12.5% of 60%]
Tufts 7.5%, [12.5% of 60%]
Total 100%
Crutcher consistently referred to the 60% controlled by his group (the California Company, Crutcher and Tufts) as the whole. However, the trial judge chose to speak of the entire operation as the whole, divided between Humble and Crutcher’s group.
The exact language of the letter agreement in question is as follows:
“This will confirm my verbal understanding with you to assign to you an undivided three percent (3%) of the interest which may be earned bv me in and to the land area covered bv Exhibit “A” of the above mentioned Letter-Agreement. dated January 6th, 1964. The three percent (3%) interest to be assigned to you shall be subject to all of the terms and conditions and reservations of interest by Humble Oil and Refining Company, contained in the above mentioned Letter-Agreement and Amendment thereto, which you have been furnished a copy of and fully understand. It is agreed and understood that the assignment of the three percent (3%) portion of my interest to be made by me shall be an assignment only of interest earned bv me in and to the two leases designated on page one (1) of the January 6th. 1964 Letter-Agreement as Humble’s Biloxi Marsh Lands Corporation Lease and Humble’s Lake Eugenie Land and Development Company. Inc. Lease, and shall not be an assignment of interest in any other lease hereafter acquired in the area. It is further understood that the three percent (3%) portion of my interest to be assigned to you shall bear its proportionate part of the costs of drilling, equipping, producing and operating any wells drilled thereon. The assignment, when made by me, shall be made without warranty of any kind whatsoever, except as to my own acts.” (Emphasis added.) Letter Agreement from Crutcher to Bordelon, dated March 2, 1964, accepted March 16, 1964.
As is made abundantly clear by both parties, the crucial language is that which is underscored above.
The agreement in question involves a real right because mineral interests are involved. R.S. 9:1105.
“The principles of law governing contracts for the assignment of oil and gas leases in respect to their formation, interpretation, performance and breach are no different than they are in respect to the ordinary contracts for the transfer of an interest in land.” Summers, Oil and Gas, § 544, p. 513, 1958.
Therefore, as pointed out in appellant’s brief, parol evidence is generally inadmissible to vary the recital contained in the act, in the absence of a showing of fraud, duress or error. C.C. Arts. 2275,[1] 2276;[2] Hemler v. Adcock, 166 La. 704, 117 So. 781 (1928). However, the concept of error necessarily *1112 comes into play when the basic agreement contains obscurity or ambiguity:
“Where the meaning of words used in the agreement are ambiguous the court may refer to other documents or to parol evidence, and the language is interpreted most strongly against the person using it. Some weight, however, may be given to the practical construction of the parties.” (Footnotes omitted.) Summers, Oil and Gas, § 544, pp. 518-519, 1958.
Plaintiff Bordelon argues that since Crutcher was the only party in privity with Humble, he “earned” the full interest assigned to him under the Humble-Crutcher farmout agreement. Further, he contends that the fact that Crutcher earned the full interest is evidenced by his instruction and authorization to Humble to assign the farmout interest as follows:
California Oil Co. 75%
Albert B. Crutcher, Jr. 12.5%
J. D. Tufts, II 12.5%
Bordelon’s position is that had Crutcher not had full ownership and control of the entire interest, he would not have had the authority to direct Humble to make such an assignment. Under Crutcher’s interpretation, as pointed out by Bordelon, Crutcher had full control over how much Bordelon would realize, and theoretically Crutcher could have assigned away the entire interest to others, thereby leaving nothing out of which Bor-delon could have his 3%.
If no parol evidence is admitted to give evidence of any other possible interpretation, the only admissible evidence is the letter agreement itself and the Crutcher-Humble farmout agreement, to which it is specifically made subject. Looking at those two documents alone, Crutcher would appear to be the only party entitled to an interest under the Humble farmout. No mention is made of Crutcher and “his group.” Therefore, Crutcher presumably would earn the entire farmout interest, and — under Bordelon’s interpretation — that would be the only possible interest on which Bordelon’s 3% interest could be based.
Crutcher’s position, on the other hand, is that parol evidence is admissible to aid in the interpretation of a written contract, citing Dufrene v. Tracy, 232 La. 386, 94 So.2d 297 (1957) and Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363 (1947). With the use of parol evidence, as the trial judge concluded, it is clear that Bordelon had actual knowledge that California Company would receive 75% of the farmout interest and that Crutcher would never receive the whole interest for himself. This is apparent because Bordelon helped set up the entire deal and necessarily knew of the California Company’s participation. In addition, the agreement between Crutcher and the California Company was signed two months prior to the time of Crutcher’s letter agreement with Bordelon. However, without the admission of parol evidence and other documents, this evidence — vital to clarification of the contract at issue here— would be irrelevant since it was not referred to in, nor made part of, the written Bordelon-Crutcher agreement.
Looking at the agreement in its entirety, the terms used are not ambiguous by themselves. Two interpretations of “the interest which may be earned by me” become possible only by looking beyond the documents themselves. Thus, it would seem at first glance that, since the agreement is unambiguous on its face, no parol evidence should be admitted to clarify its terms.
However, in the. interpretation of contracts, it is also necessary to refer to Civil Code Articles 1945-1962 on this subject. Civil Code Article 1945[3] provides the general rules, while the subsequent articles set forth specific rules and exceptions. Words are to be understood in their normal usage *1113 (C.C. Art. 1946), and any doubtful provisions may be clarified by reference to other agreements between the same parties on the same subject (C.C. Art. 1949). Most importantly, however, in interpreting a contract, the true intention of the parties at the time of its execution should be determined if possible, rather than' applying a literal interpretation. C.C. Art. 1950; Cor-bin, Contracts, § 536, p. 500, 1952.
To ascertain the intention of the parties, it is almost essential to resort to parol evidence and surrounding circumstances. This was aptly stated in Corbin, Contracts, § 542, at pp. 514-515:
“It is sometimes said that if the words of a contract are plain and clear, evidence of surrounding circumstances to aid interpretation is not admissible. But some of the surrounding circumstances always must be known before the meaning of the words can be plain and clear; and proof of the circumstances may make a meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear. Sometimes the circumstances proof of which is offered do not have any probative value and do not affect a meaning that is arrived at without them. When such is the case, such circumstances are immaterial. In other cases, the testimony of additional factors may not be believed by the trial court after it has been admitted, in which case the meaning of words that is otherwise ‘plain and clear’ will be adopted.
“Cases in which this is said should be carefully examined to determine whether or not the circumstances proof of which is offered would in fact have any probative value. Of course, an otherwise ‘plain’ meaning should not be disturbed by the proof of irrelevant circumstances or of those having only a remote bearing or inconsequential weight. But until a court knows the circumstances it can not properly say that they have no probative value. It seems highly probable that when a court says that it will endorse a contract in accordance with the ‘plain and clear’ meaning of its words, the relevant surrounding circumstances have in fact been proved and have been carefully weighed; the losing party has merely urged the drawing of inferences therefrom that the court is unwilling to draw. It is a very commonly reported statement that words are to be given ‘their plain, ordinary, and popular meaning’; but this is always limited by adding some such clause as the following: ‘in the absence of relevant evidence indicating that the words were used with a different meaning.’ If there is in fact a ‘plain, ordinary, and popular’ meaning of words used by the parties, that fact is evidential that the parties used them with that meaning. It is fully overcome, however, as soon as the court is convinced that one of the parties used and understood the words in a different sense and that the other party had reason to know it.” (Footnotes omitted.)
In this case, the trial judge obviously concluded that parol evidence was necessary to discover the true intent of the parties. He also concluded that the parol evidence (Bordelon’s knowledge of the California Company’s participation) showed that the intent of the parties was to give Bordelon 3% of the 12.5% received by Crutcher (or, in terms of the judge’s particular formulation — which is the same thing — 3% of Crutcher’s 15% of the whole). We find no error in this conclusion.
It is true that the agreement did indicate that Bordelon’s 3% interest was to bear its proportionate share of the costs and that Crutcher’s office billed him for 3% of the whole rather than for 3% of Crutcher’s 12.5% share. However, Crutcher testified that these bills were in error and that he had no part in the billing of Bordelon (see Tr. 26, 28). In any case, the basic intention of the parties to the contract appears too clear to be undone by this single set of circumstances. Clearly, the trial judge so concluded.
The judgment of the trial court, ruling in favor of the defendant Crutcher with regard to the main demand, is affirmed.

AFFIRMED.

. “Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.” C.C. Art. 2275.

. “Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.” C.C. Art. 2276.

. “Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
******
“Second — That courts are bound to give legal effect to all such contracts according to the true intent of the parties;
“Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences; * * * ” C.C. Art. 1945.