430 So.2d 1107 (1983)
Irion J. BORDELON
v.
Albert B. CRUTCHER.
No. CA 0108.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
Rehearing Denied May 24, 1983.
*1108 Shushan, Meyer, Jackson, McPhearson & Herzog, Bradley M. Smolkin, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John W. Haygood, New Orleans, for defendant-appellant.
Before GULOTTA and BYRNES, JJ., and G. WILLIAM SWIFT, Jr., J. Pro Tem.
BYRNES, Judge.
This appeal arises from a suit for restitution of sums alleged to have been mistakenly overpaid by appellee, Irion J. Bordelon, to appellant, Albert B. Crutcher, under a contract entered into in 1964. Crutcher filed an exception of prescription which the trial court dismissed. After a trial on the merits the court ruled in favor of appellee and awarded him $6,199.64. Crutcher has appealed that judgment on both procedural and factual grounds.[1]
The facts leading to this dispute are as follows: In January, 1964 Crutcher entered into a "farm-out" agreement with Humble Oil & Refinery Co. whereby he would be assigned specific rights in mineral leases on property located in St. Bernard Parish on the condition that he drill certain wells on the property. To help finance the drilling and completion of those wells, Crutcher, at Bordelon's suggestion, approached the California Co. (Chevron), which eventually agreed to participate in exchange for a percentage of Crutcher's "farm-out" interest.
Crutcher further subdivided his holdings by assigning one half of his retained interest to J.D. Tufts, his business partner. In March, 1964, he entered into a contract with Bordelon in which it was agreed that Bordelon would be assigned 3% of the interest Crutcher would eventually earn from his "farm-out" agreement with Humble Oil. In exchange Bordelon assumed a responsibility for drilling and completion costs proportionate to the interest he acquired from Crutcher.
A dispute later arose between the Bordelon and Crutcher over the percentage of interest due to Bordelon. In 1968 Bordelon filed suit to enforce his understanding of the contract, contending that he was entitled to 3% of the entire interest Humble Oil *1109 originally transferred to Crutcher not merely to 3% of the lesser interest Crutcher retained after sub-dividing his original interest.
That litigation concluded with a 1978 decision of this court affirming the judgment of the trial court and denying Bordelon's claim. See Bordelon v. Crutcher, 365 So.2d 1109 (La.App. 4th Cir.1978).
In June 1980, Bordelon filed a petition in the case now before us, demanding that, based on the outcome of the previous litigation, he be reimbursed for the drilling and completion costs which he had overpaid under his interpretation of the contract. Crutcher filed an exception of prescription which the trial court dismissed without written reasons.
Although prescription generally begins to run at the time of the occurrence of the facts which give rise to the cause of action, it does not run against one who is ignorant of the existence of facts which would entitle him to bring suit as long as such ignorance is not willful and does not result from his neglect. Dean v. Hercules Inc., 328 So.2d 69 (La.1976) Langendorf v. Administrators of the Tulane Education Fund, 361 So.2d 905 (La.App. 4th Cir.1978) writs denied 364 So.2d 120 (La.1978) and 363 So.2d 1384 (La.1978).
Although Bordelon knew that Crutcher disputed the extent of his interest before filing the first suit in 1968 he could not know if he had overpaid his share of costs or the extent of such over payment until the trial court in the first suit rendered final judgment. Plaintiff could not have filed a reconventional demand or have timely instituted a separate suit for reimbursement since plaintiff was ignorant not only of the extent of his overpayment but of the whether he had overpaid at all. Thus prescription did not run against the plaintiff on the second suit and the trial judge properly dismissed defendant's exception of prescription.
We now address appellant's arguments concerning the amount which Bordelon overpaid. Crutcher first contends that it was proper for him to have assessed Bordelon with 3% of drilling and completion costs because Crutcher's interest was responsible for all of these costs. This position does not seem to be supported by the facts.
It was conclusively established in the earlier suit that Chevron participated in the drilling of the wells. See Bordelon v. Crutcher, supra, 365 So.2d at 1110. Moreover, the record contains documents showing that appellant, Crutcher entered into an agreement with the California Co., (Chevron) whereby Chevron agreed to pay $50,000.00 of initial drilling costs and, when the well reached a specified depth, elect either to end their participation or pay 75% of completion costs in exchange for 75% of Crutcher's working interest in future production.
Other documents in the record show that when the appellant instructed Humble Oil as to the proper division of the 60% working interest he had earned under the terms of his farm out agreement, California Co. was listed as assignee of 75% of Crutcher's original 60% interest. These documents and the findings made in the earlier case lead to the inevitable conclusion that Chevron elected to participate in completion of the well and consequently participated in payment of both drilling and completion costs.
Thus it appears that Crutcher's interest did not bear the total cost of drilling or completing the well. Rather it seems that completion costs were shared in proportion to the interest each party had in the wells. The Chevron interest paid 75% and the Crutcher interest paid 25%. Crutcher's interest had been divided by him so that his partner Tufts held 12.5% and Crutcher held 12.5%. Crutcher had further divided his interest by assigning 3% of the 12.5% he retained to Bordelon. It is on the basis of this division of Crutcher's "farm-out" that the respective liability of the parties must be calculated.
By the terms of his agreement with Chevron, Crutcher was reimbursed for the first $50,000.00 of drilling costs. Drilling *1110 costs in excess of that amount were to be borne solely by Crutcher and his assigns until pay out. Thereafter Chevron agreed to pay 75% of completion costs. Thus the responsibility of Crutcher and his assigns varied with the nature of the expense involved.
Bordelon's liability in this arrangement can be summarized as follows: He was responsible for 3% of Crutcher's share of excess drilling costs. Crutcher's share of these costs was 50% (half to him and half to Tufts). Thus Bordelon's liability for excess drilling costs was 3% of 50%. Crutcher's liability for completion costs was 12.5% and Bordelon was responsible for 3% of that amount. Based on this division of liability the trial judge was correct in awarding Bordelon $6,199.64 as reimbursement the costs which he had overpaid.
Appellant contends that the appellee did not adequately prove payment of $2,008.74 of the contested expenses because no corroborating evidence on these figures was produced. This amount was apparently paid twice through an error on the part of the appellee.
The record contains copies of invoices sent by Crutcher to Bordelon indicating the amounts billed. The disputed amount is made up of the total of two invoices dated 4/24/64. A subsequent invoice dated 4/30/64 cummulated the amount due on these invoices with that on two others, for a total bill of $4,793.65. Bordelon testified that he paid the 4/24/64 invoices when they were received and inadvertently paid the same amount again as part of the 4/30/64 invoice. This invoice did not itemize the bills which it cummulated but merely listed a lump sum due. We feel that Bordelon's uncontradicted testimony as to the duplication of payment was sufficiently corroborated by these invoices, showing duplicate billing, to support the trial judge's conclusion that Bordelon paid $2,008.74 of the amounts invoiced twice, bringing his total payments to $6,798.86.
Appellant also complains that the trial judge erroneously fixed interest to run from judicial demand contending that in a suit based on quantum meruit, interest runs only from the date the debt is certain (i.e. the date of judgment). We agree.
In a suit based on quantum meruit interest is not allowed from the date of judicial demand, but rather from the date of final judgment. See Succession of Butler, 294 So.2d 512 (La.1974); Smith v. McMichael, 381 So.2d 898 (La.App. 2nd Cir. 1980). In this case it was not certain that Crutcher owed Bordelon anything until the conclusion of the second suit. Crutcher raised the defense of prescription to the alleged debt and additionally contested the amount Bordelon alleged he had paid. In those circumstances we cannot say that the debt was sufficiently certain to justify an award of interest from the date of judicial demand in the second suit.
The judgment of the trial court is therefore amended to provide for legal interest from the date of the lower court's judgment at the rate of 10% per annum until September 11, 1981 and at the rate of 12% per annum from September 12, 1981 until paid. In all other respects the judgment is affirmed.
All costs of this appeal are to be borne by appellant.
AFFIRMED & AMENDED.
G. WILLIAM SWIFT, J. pro tem., dissents and assigns reasons.
G. WILLIAM SWIFT, Judge Pro Tem., dissents and assigns written reasons.
I respectfully dissent, being of the opinion that the defendant's plea of ten years prescription should have been sustained and the suit dismissed.
I have no quarrel with the majority's statement of our law, based on Dean v. Hercules, Incorporated, 328 So.2d 69 (La. 1976) and Langendorf v. Administrators of Tulane Ed. Fund, 361 So.2d 905 (La.App. 4 Cir.1978), writs denied, that prescription "does not run against one who is ignorant *1111 of the existence of facts[1] which would entitle him to bring suit as long as such ignorance is not willful and does not result from his neglect." However, it is clear in this case that Mr. Bordelon knew all of the facts involved in the claim he now asserts against Mr. Crutcher.
It is obvious he was fully aware of the contracts as well as the mineral operations on the property and the cost thereof. The plaintiff also knew before he filed his first suit on March 2, 1968, that the defendant disputed his interpretation of the contract and his claim to the greater interest in the farmout. In addition, he knew or should have known that if the defendant was correct the plaintiff had paid more than his share of the well costs. His mistake was one of law, not ignorance of any facts as to what he owed. However, he neglected to take any steps to assert his claim for reimbursement until this second suit was filed in June, 1980. He could have done so in the first case through a reconventional demand filed in the alternative or by timely instituting a separate suit on such cause of action. I am, therefore, convinced the plea of prescription should have been sustained.
NOTES
[1] He also complains in brief of a subsequent judgment rendered by the trial court awarding Bordelon $1,500.00 as an attorney's fee under La.C.C.P. Article 1472 for failure to admit certain discovery information. The record does not contain an appeal by him from the May 19, 1982 judgment so that issue is not before us.
[1] Emphasis added.