Ernest E. **ADAMS, Plaintiff-Appellant,**

v.

**JOHNS–MANVILLE SALES CORPORATION, et al., Defendants-Appellees.**

No. 82–4550.

United States Court of Appeals,
Fifth Circuit.

March 23, 1984.

Jane Saginaw, Brent W. Rosenthal, Russell W. Budd, Dallas, Tex., for plaintiff-appellant.

Thomas W. Davenport, Jr., Monroe, La., for Eagle-Picher Industries, Inc.

George A. Weller, Beaumont, Tex., for Fibreboard Corp.

Dewey J. Smith, Monroe, La., for Celotex Corp.

Orgain, Bell & Tucker, John G. Tucker, Beaumont, Tex., for GAF Corp.

Before CLARK, Chief Judge, GARZA and JOLLY, Circuit Judges.

CLARK, Chief Judge:

Ernest Adams, a former commercial insulator, brought this action in diversity seek-

ing recovery for injuries allegedly resulting from his exposure to the defendants' asbestos products. He appeals the jury verdict for the defendants on the grounds that the district court erroneously excluded evidence of his increased risk of cancer and of his future damages, and erroneously denied a new trial. We affirm.

## I. Facts and Procedural Background

Adams worked full-time as a commercial insulator from 1951 through 1956 and from 1960 through 1966. During the years 1957 through 1959, he served in the Marines, doing only a "few days" insulation work while home on leave. From 1967 through 1972, he did part-time insulation work, working full-time in his family's dry-cleaning business. Currently, he is president of his own insulation contracting business and personally performs little if any insulation work.

Before starting his own business, Adams would get insulation jobs when his union referred various employers to him. He testified that he had worked on "thousands of jobs" for various contractors, sometimes doing several jobs a day and sometimes working on a single job for one or two months.

Adams testified that he had done solely commercial and industrial insulation work. He insulated heating and air conditioning systems, pipes, and boilers. Adams testified that he often worked in closed environments and that dust became very thick as insulators sawed and pounded insulation materials.

Adams testified that he regularly used asbestos blocks, premolded asbestos pipe insulation, and asbestos cement, as well as numerous other non-asbestos insulation products. He testified that he never saw any warning labels on the asbestos products. He wore no respirator or other protective gear.

Adams was unable to recall the manufacturer of every asbestos product used on every job, but he did recall using specific products on specific jobs during his insulating career. He recalled using many other asbestos products without being able to recall the specific dates and places.

On July 18, 1979, Adams filed suit against thirteen manufacturers of asbestos products, seeking recovery under theories of strict liability, negligence, and breach of warranty for injuries allegedly caused by his exposure to asbestos. The complaint alleged damages of lost earning capacity, medical expenses, and emotional and physical pain and suffering. The complaint did not specifically identify the nature of the alleged physical injury.

During the trial, Adams testified that as of the time he had filed his complaint, he had in fact lost no wages and incurred no medical expenses for treatment of any asbestos-related disease. In July, 1980, and again in October, 1981, Adams had consulted a Houston toxicologist, Dr. Eric Comstock, who appeared at trial as Adams' expert witness. The evidence indicated that at the times of these examinations, Adams had complained of none of the symptoms normally associated with asbestosis. He had no shortness of breath, chest pain, or cough. Adams had suffered some dizziness, but Dr. Comstock attributed it to Adams' recent dieting.

Dr. Comstock testified that he had detected abnormal breathing sounds in Adams' lungs ("crackling rales"), some pleural calcification, and a "minimal obstructive ventilatory defect." Dr. Comstock's diagnosis was "pleural and parenchymal fibrosis, secondary to occupational exposure to asbestos. That interprets to asbestosis." Dr. Comstock testified that it was a progressive condition.

The defendants' expert, Dr. Arthur Tillinghast, examined Adams in February, 1982. Dr. Tillinghast testified that Adams had complained of no specific symptoms of asbestos-related disease. Dr. Tillinghast testified that X rays revealed a small amount of calcification and scarring in Adams' lungs, consistent with asbestos exposure. He also noted a small amount of airway obstruction, "probably from the

years of smoking."[1] Dr. Tillinghast concluded that Adams did not meet the criteria "for being symptomatic from any kind of disease." Dr. Tillinghast was unable to predict, on the basis of his one examination, whether Adams would develop asbestos-related disease in the future.

Four defendants settled before trial.[2] Raybestos-Manhattan, Inc. was dismissed from the action with prejudice. In response to special interrogatories,[3] the jury found that Adams had not been exposed to the asbestos insulation products of three of the eight remaining defendants.[4] With respect to Fibreboard Corp. and Celotex Corp., the jury found that Adams had been exposed to their asbestos products, but that there were no defects in their asbestos products to which Adams had been exposed. With respect to Johns-Manville Sales Corp., Eagle-Picher Industries, Inc., and GAF Corp., the jury found that Adams had been exposed to their asbestos products and that those products were defective, but that the defects were not the legal cause of any injury to Adams. The jury awarded Adams no damages.

1. Evidence introduced at trial indicated that Adams was smoking as many as 15 cigars a day before he quit in 1974.

2. The settling defendants were: Owens-Corning Fiberglas Corp.; Armstrong Cork Co.; Nicolet, Inc.; and Unarco Industries, Inc.

3. The trial court submitted these special interrogatories with respect to each defendant:

   (1) Do you find, by a preponderance of the evidence, that Mr. Adams was exposed to the asbestos insulation products manufactured by [this defendant]?
   Yes_____ No_____
   If your unanimous answer is "no", you will return a verdict for [the defendant], and do not answer any further questions regarding [this defendant]. If your unanimous answer is "yes", continue to question two.
   (2) Do you find, by a preponderance of the evidence, that there was any defect in the asbestos insulation products of [the defendant] to which Mr. Adams was exposed?
   Yes_____ No_____
   If your unanimous answer is "no", you will return a verdict for [this defendant], and do not answer any further questions regarding [this defendant]. If your unanimous answer is "yes", continue to question three.

The trial court denied Adams' motion for a new trial. Adams appeals the judgment only with respect to Eagle-Picher Industries, Inc., GAF Corp., Fibreboard Corp., and Celotex Corp.[5]

## II. Damages for Increased Risk of Future Cancer

■ The trial court excluded all evidence of Adams' alleged increased risk of cancer resulting from exposure to asbestos. The trial court explained its reasons for excluding the evidence:

> Plaintiff Adams does not now have cancer and by whatever definition plaintiff wishes to use, any reference that he may or might have cancer in the future is only a possibility. There can be no causal link with an injury when that injury hasn't yet occurred so ... I stand by the ruling I made at the pretrial conference that no evidence regarding cancer will be submitted to this jury ....

Adams argues that the trial court erred in this ruling, because the excluded cancer evidence was admissible to prove his claim for recovery of damages for sustaining an in-

   (3) Do you find, by a preponderance of the evidence, that the defect was the "legal cause" of any injury to Mr. Adams?
   Yes_____ No_____
   If your unanimous answer is "no", you will return a verdict for [this defendant], and do not answer any further questions regarding [this defendant]. If your unanimous answer is "yes", continue to question four.
   (4) Do you find, by a preponderance of the evidence, that [this defendant] has established the defense that Mr. Adams "assumed the risk" of injury?
   Yes_____ No_____
   If your unanimous answer is "yes", you will return a verdict for [this defendant]. If your unanimous answer is "no", you must enter a verdict for Mr. Adams.

4. The jury found that Adams was not exposed to the asbestos products of Keene Corp., Pittsburgh Corning Corp., or Forty-eight Insulations, Inc.

5. During the pendency of the motion for a new trial, Johns-Manville filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The instant proceeding is stayed against Johns-Manville. *See In re Johns-Manville Corp.*, Nos. 82B 11,656 to 82B 11,676 (Bankr.S. D.N.Y. filed Aug. 26, 1982).

creased risk of future injury. We affirm the trial court's exclusion of the evidence.

In *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506 (5th Cir.1984), also decided today, we held that, under Mississippi substantive law, a cause of action for prospective cancer does not accrue upon the manifestation of the physically separate and distinct injury of asbestosis. We reasoned that lack of the requisite element of causation of cancer foreclosed a cause of action for prospective cancer. We also found that the equities of this situation weighed in favor of not recognizing the cause of action for cancer until the plaintiff knows or with the exercise of reasonable diligence should have discovered that he has contracted cancer.

Louisiana substantive law compels the same results. The Louisiana Supreme Court has observed that special considerations inform the accrual of a cause of action for limitations purposes where the damages result from a non-traumatic initial exposure to the source of potential harm.

In modern technology damages from industrial emissions and the like may not become apparent until some years after the occurrence. Additionally, it might be impossible for the injured party to know what or who caused the damage, until an investigation can be made after the damage in fact becomes apparent. In such cases, the prescriptive period would run only from the date the damage becomes apparent.

*Dean v. Hercules, Inc.*, 328 So.2d 69, 73 (La.1976). *See also Bordelon v. Crutcher*, 430 So.2d 1107, 1109 (La.App.1983).

This court held in *R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776 (5th Cir.1963) that, under Louisiana law, for limitations purposes, a cause of action against a tobacco company for cancer resulting from tobacco use did not accrue until the "disease manifested itself to the point when [the plaintiff] knew, or should have known, that the damages he sustained, which were the subject of his suit, resulted from smoking the defendant's tobacco products." *Id.* at 786.

Likewise, in *DeLaughter v. The Borden Co.*, 364 F.2d 624, 629 (5th Cir.1966), we distinguished times of maturity for causes of action based on traumatic and non-traumatic injuries:

We ... hold that where an act does not effect a traumatic injury but produces its ill effect by the passage of time, and it would be impossible to designate the exact moment when the act produced the requisite damage to start the running of the statute of limitations, we allow recovery for all damages sustained within one year prior to filing suit.

We observed in *Jackson* that, as the two issues relate to the underlying theory of causation, the determination of the time of accrual of a cause of action for limitations purposes involves identical values as the determination of when a cause of action arises for prospective injuries from exposure to asbestos. We determined that the requisite element of causation is lacking until separate prospective injuries materialize.

We found further that it would be inequitable to hold defendants presently liable for uneffected future harms, whereas the plaintiff would suffer little if any injury by being required to await manifestation of cancer before being able to sue on a claim for damages resulting from that class of conditions.

In the instant case, Adams made no claim that he currently has cancer. Accordingly, the trial court did not abuse its discretion, *see Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681, 682 (5th Cir.1979), in excluding the cancer evidence.

Adams places great reliance on *Martin v. City of New Orleans*, 678 F.2d 1321 (5th Cir.1982) for the proposition that risk of future complications supports current recovery for damages. The plaintiff in *Martin* suffered a traumatic injury, a gunshot wound in the neck. In that case, legal causation was complete for any future consequences. "Because he has only one day in

court, he must collect now for any losses that may occur in the future." *Id.* at 1327.

*Martin* is inapposite to the case at bar. In *Martin,* the issue was the excessiveness of a jury verdict. We held that the evidence was sufficient to justify the award. We did not rule on the propriety of the trial court's admission of testimony regarding the risk of future complications.[6]

In the instant case, Adams is not confined to a single day in court with respect to those defendants whose products were found defective. In accordance with our holding in *Jackson,* Adams will have a new cause of action, with new damages, if he contracts cancer in the future and can trace the cause of his cancer to asbestos as opposed to tobacco smoking or some other cause. In the second suit on a different cause of action, the parties will be "estopped from relitigating only those issues actually and necessarily decided in the first suit." *Dore v. Kleppe,* 522 F.2d 1369, 1374 (5th Cir.1975).

On the other hand, the instant action is res judicata with respect to those defendants to whose products the jury found that Adams had not been exposed and with respect to those defendants whose products the jury found not defective.

### III.  Jury Instructions

■ Adams argues that the trial court erred in failing to give the jury a specific instruction regarding his future loss of earning capacity, future medical expenses,

and pain and suffering as elements of his damages. This argument is without merit.

In *Martin v. City of New Orleans,* 678 F.2d at 1325, we stated:

> In reviewing alleged errors in jury charges, we must look at the charge as a whole to determine whether it fairly and adequately apprised the jury of the applicable law and its duty to resolve the issues thereunder. *Smith v. Borg-Warner Corp.,* 626 F.2d 384, 386 (5th Cir. 1980). If the charge leaves the reviewing court with "substantial and ineradicable doubt as to whether the jury has been properly guided in its deliberations" it cannot stand. *Dwoskin v. Rollins, Inc.,* 634 F.2d 285, 293 (5th Cir.1981). A party does not have a right to have any particular charge read to the jury even if its requested charge is a correct statement of the law. *Ullman v. Overnite Transportation Co.,* 563 F.2d 152, 157 (5th Cir. 1977). And when a specific instruction requested by a party is substantially covered by the court's charge, there is no error. *McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 759 & n. 9 (5th Cir. 1979).

The trial court did in fact instruct the jury that it could award Adams damages for "mental and physical aspects of injury—tangible and intangible ..." and for "mental anguish." The court further instructed that no specific evidence of the value of Adams' "mental or physical pain and suffering" was required to support an award for such damages.[7] Adams' requested in-

---

6. Likewise, in *Clark v. Taylor,* 710 F.2d 4, 13–14 (1st Cir.1983), upon which Adams also seeks to rely, the court ruled only on excessiveness of damages, and not on the admissibility of evidence concerning the plaintiff's fear of contracting cancer.

7. The jury was instructed:

> If you find that a verdict should be entered in favor of Mr. Adams, you must determine the amount of damages Mr. Adams is entitled to recover. In considering the issue of Mr. Adams' damages, you are instructed that you should award the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of Mr. Adams' damages caused by exposure to asbestos, no more and no less. Dam-

ages must not be based on speculation because it is only actual damages—what the law calls compensatory damages—that are recoverable.

> On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury—tangible and intangible. They are an attempt to restore Mr. Adams, that is, to make him whole or as he was immediately prior to his injuries.

> You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no others.

> Any bodily injury sustained by Mr. Adams and any resulting disability, mental anguish and loss of capacity for the enjoyment of life

struction for pain and suffering is substantially covered by this charge.

■ With respect to future medical expenses and future loss of earning capacity, Adams introduced no evidence as to what those damages might be or that he would in fact incur them. Under Louisiana law, Adams is entitled to recover for prospective damages that are more probable than not. *See Jordan v. The Travelers Insurance Co.*, 257 La. 995, 245 So.2d 151, 157 (1971). The judge is not required, or indeed allowed, to instruct the jury on a plaintiff's claimed losses when there is no proof of loss in the record. *See American Oil Co. v. Dastugue*, 316 F.2d 507, 508–09 (5th Cir.1963) (reversible error for trial court to instruct on claim of loss of earnings in absence of proof of lost earnings).

Adams relies on *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665 (5th Cir.1974), in which we held that the trial court did not err in submitting to the jury the issue of a longshoreman's lost future wages, even though there was no quantified evidence of lost future wages, where the evidence supported a reasonable assumption that the plaintiff would be a "less desirable longshoreman" in the future. *Id.* at 668.

■ *Bonura* is inapposite to the case at bar. *Bonura* was decided under general maritime law, not Louisiana law. Furthermore, the instant record does not support an assumption that Adams' alleged injuries will make him any less capable in the performance of his present duties as president and majority shareholder of his own insulating business. Accordingly, the court committed no error in refusing to instruct the jury as to Adams' future medical expenses and loss of earning capacity.

## IV. Sufficiency of Evidence

Adams argues that the trial court erred in denying his motion for a new trial, because the jury's answers to the special interrogatories were against the great weight of the evidence. We disagree.

■ Our review of the trial court's decision to deny a motion for a new trial is a most narrow one. We may reverse such a decision only upon a clear showing that the court abused its discretion. *Golman v. Tesoro Drilling Corp.*, 700 F.2d 249, 251–52 (5th Cir.1983); *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 890 (5th Cir.1983). If the jury's verdict has a reasonable basis in the proof, we may not reverse. *Lavender v. Kurn*, 327 U.S. 645, 652, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946).

■ The jury had a reasonable basis to find that the products of Eagle-Picher Industries, Inc. and GAF Corp. were the cause of no legal injury to Adams. Adams' expert witness testified that Adams had complained of no symptom of asbestos-related disease. The defendants' expert testified that Adams suffered from no asbestos-related disease and that certain observed irregularities might be attributable to Adams' past heavy smoking. Adams testified that he had incurred no medical expenses as of the time he filed his claim and had lost no wages. The evidence indicated that Adams still leads an active life and regularly works fifty to sixty hours a week.

■ Likewise, the jury was entitled to find that the products of Fibreboard Corp. and Celotex Corp. were not defective. Whether a particular asbestos product is unreasonably dangerous is a question of fact, not law. *See Migues v. Fibreboard Corp.*, 662 F.2d 1182 (5th Cir.1982) (rejecting district court's application of estoppel based on stare decisis on the issue of whether asbestos products were unreasonably dangerous). Under Louisiana law, the plaintiff has the burden of proving that the product was "unreasonably dangerous." *See Weber v. Fidelity & Casualty Insurance*

experienced in the past or to be experienced in the future. No evidence of the value of such intangible things as mental or physical pain and suffering has been or need be introduced. In that respect it is not value you are trying to determine, but an amount that will fairly compensate Mr. Adams for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any such award should be fair and just in light of the evidence.

*Co.,* 259 La. 599, 250 So.2d 754, 755 (1971). Adams introduced evidence to show that he had been exposed to Celotex products containing six to seven per cent asbestos, and to Fibreboard products containing twelve per cent asbestos. Adams' expert witness, Dr. Comstock, testified that products which release asbestos fibers in the air are unreasonably dangerous. Adams presented no evidence about the friability of the particular products in question, or about other specific characteristics that would make them unreasonably dangerous. The jury acted within its province in determining that Adams had not carried his burden of proof as to these products.

■ Adams complains the jury answered the special interrogatories inconsistently, finding some defendants' products unreasonably dangerous and others' not, where the evidence provided no legitimate basis to differentiate the products. The jury has the prerogative to find one product unreasonably dangerous and another not. As long as there is a reasonable evidentiary basis to support its findings, consistency is not required. *See Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1083–85 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). On the record before us, we cannot say that the jury lacked a reasonable evidentiary basis for its findings.

### V. Mental Anguish from Increased Risk of Cancer

In *Jackson,* we indicated that it was initially a matter for the trial court's exercise of discretion under Fed.R.Evid. 403 whether to admit evidence of the plaintiff's fear of the risk of cancer as proof of a compensable basis for mental anguish. In the instant case, the trial court did not expressly weigh the probative value of the evidence in regard to this issue as opposed to the harm likely to result from its admission. In *Jackson,* where the issue of asbestosis damages had to be retried, we remanded this issue for proper weighing under Fed.R.Evid. 403 to determine the admissibility of evidence of mental anguish associated with fear of cancer. Today's case is procedurally different.

We have affirmed the trial court in every aspect of the present proceeding. To remand the action on this singular aspect of a present action for mental anguish would be unjust to all parties and unwise as a matter of judicial administration. The interests of justice require that it should be reserved for presentation as part of a later cause of action for damages for cancer, should such a cause of action later mature. Subject to our holdings above as to issues already litigated, Adams may present any claim for mental anguish he may now possess as a part of such later cause of action. *See* 28 U.S.C. § 2106.

### Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.